**In re CEDAR BAYOU, LTD., a Pennsylvania limited partnership, Debtor.**

**Alfred A. SHAMAH, Steven J. Gumenick and Ronald J. Stark, Plaintiffs,**

v.

**CEDAR BAYOU, LTD., Defendant.**

Civ. A. No. 78–204.

United States District Court,
W. D. Pennsylvania.

Aug. 8, 1978.

Robert L. Potter, Pittsburgh, Pa., and Roslyn Litman, Pittsburgh, Pa., for Cedar Bayou Ltd.

Myron B. Markel, Pittsburgh, Pa., William H. Holden, Jr., Baltimore, Md., for appellee-creditors Alfred Shamah and Steve Gumenick.

## OPINION

SNYDER, District Judge.

This appeal is taken from a bankruptcy judge's decision that a bankruptcy court lacks jurisdiction to determine the validity of the creditor's lien in a Chapter XII real property arrangement when a creditor seeks to annul the automatic stay of his lien enforcement proceedings. The bankruptcy judge struck the debtor's answer containing defenses that disputed the lien as obtained through a course of fraud and disputed the irreparable harm alleged by the creditor, and then annulled the stay without hearing. We remand for hearing on relief from the automatic stay consistent with this Opinion.

·I.

Chapter XII of the Bankruptcy Act, 11 U.S.C. § 801 *et seq.*, provides a means for financial rehabilitation of debtors, other than corporations, who are insolvent or unable to pay debts as they mature, 11 U.S.C. § 823, and whose debts are secured by real property, 11 U.S.C. § 861. A Chapter XII arrangement primarily involves creditors having a security interest in the debtor's real property, and may include all creditors secured and unsecured. 11 U.S.C. § 861. The statutory scheme is to keep the debtor in business during an arrangement under which all creditors are to be paid.

The debtor initiates the Chapter XII process by filing a voluntary petition, 11 U.S.C. §§ 822, 823, through which the bankruptcy court obtains exclusive jurisdiction over the debtor and his property, wherever located, 11 U.S.C. § 811. The debtor continues in possession of the property, 11 U.S.C. § 844 (although in some cases the court may appoint a trustee, 11 U.S.C. § 832), and all lien enforcement proceedings against the debtor's property are automatically stayed to provide a period for investigation and review of the debtor's affairs to determine if rehabilitation is feasible and to enable him to formulate and present a workable plan of arrangement. 11 U.S.C. §§ 828, 907; Rule 12–43. The debtor then proposes a plan of arrangement, and the court reviews the plan at the meeting of creditors. Certain creditors may also propose a plan of arrangement. 11 U.S.C. § 866; Rule 12–36(b).

A plan of arrangement may be confirmed when approved by the creditors of each class, holding two-thirds of the amount of the debts of such class, affected by the arrangement whose claims are proved and allowed. 11 U.S.C. § 868. If a creditor's debt is not listed as disputed or contingent, and no objection is made to allowance, his claim is deemed proved and allowed without his filing a proof of claim. Rule 12–30(a). However, if a debt is disputed by the debtor, the creditor must file a proof of claim within the time set by the court, or he will not be permitted to vote on the plan or

share in distribution. Rule 12–30(b)(3). Chapter XII also contains a "cram-down" provision which binds affected but non-accepting creditors under the plan, so long as the dissenting creditors are otherwise adequately protected. 11 U.S.C. § 861(11).

## II.

We glean from the parties that the Appellant-Debtor here, Cedar Bayou, Ltd., is a Pennsylvania limited partnership formed in 1974, as the investor partner in a joint venture in two garden apartment complexes in Baytown, Texas. According to Cedar Bayou's petition and civil complaint attached hereto,[1] the promoter-partner in the joint venture was a Texas limited partnership, Baytown, Ltd., also formed in 1974 by Appellee-Creditors Alfred Shamah and Steve Gumenick to operate the garden apartment venture. To raise money for the joint venture, 100 units of Cedar Bayou limited partnership interests were sold in October of 1974 to 25 investors in the Pittsburgh area for a total of $700,000.

Both apartment complexes operated at substantial losses, and in February of 1976, Shamah and Gumenick made a personal loan of $206,062.72 to the joint venture to pay off second mortgages on the properties, the larger of the two complexes was turned over to the first mortgagee, and the joint venture continued to operate only the smaller complex. A demand note was given for the $206,062.72 loan, secured by a deed of trust in the apartment complex. The apartments continued to lose money, and, after the limited partners of Cedar Bayou rejected a proposed sale of the remaining apartment complex, Shamah and Gumenick sent the joint venture a notice of default on the demand note on January 14, 1977, and they proceeded to foreclose on the property in Texas.

On September 22, 1977, prior to a scheduled foreclosure sale by the trustee appointed under the deed of trust (also an appellant here), Cedar Bayou filed an original Chapter XII petition in the Bankruptcy Court for the Western District of Pennsylvania, stating that it was insolvent and unable to pay debts as they matured. The Petition listed all known creditors, including Shamah and Gumenick, but disputed the validity of all the debts for the reasons stated in its civil complaint filed in the District Court for the Western District of Pennsylvania. The essence of that complaint was fraud in the transactions surrounding the joint venture and sale of Cedar Bayou limited partnership interests.[2]

On September 27, 1977, the Bankruptcy Court sent all listed creditors notice of the Rule 12–43 automatic stay of lien enforcement proceedings. Shamah, Gumenick and the Deed of Trust Trustee thereupon filed a complaint to annul the Rule 12–43 stay of lien enforcement, alleging that Cedar Bayou was indebted to Shamah and Gumenick in the amount of $235,070.98 ($206,063.72

1. The Chapter XII Petition incorporated by reference and contained a copy of a civil complaint filed by the limited partners of Cedar Bayou against three of the creditors named in the Petition, and others, *McLure, et al v. Shamah, et al,* Civ. Action No. 77–957 (W.D.Pa., filed August 19, 1977). Plaintiff's request for preliminary injunction of foreclosure of the property in that case has been stayed pending resolution of this appeal from the Bankruptcy Court's annulment of the stay. *See* note 2 *infra* for a discussion of the substance of the Complaint.

2. The Complaint alleges that Shamah, in agreement with Gumenick and Donald Martin, Jr. (general partner of Cedar Bayou and Controller of Brunswick Management Corp.), planned to acquire the apartment complexes with a minimal outlay of cash, to recover that cash and a bonus by syndication to private investors while retaining large equity interest in the property, to install his own corporation, Brunswick Management Corp., as manager of the apartments for a 5% fee, and to have Brunswick act as real estate broker in the sale of the property in return for a commission; that to entice investors into a scheme of this nature, it was an integral part of the plan to conceal material information; that they caused the formation of Baytown, Ltd. and Cedar Bayou, Ltd., with Martin as sole general partner of Cedar Bayou, to accomplish this purpose; and that Shamah and Gumenick became secured creditors of Cedar Bayou and the private investors by continuing concealment of their lack of direct investment in the project. The Complaint alleges violations of various provisions of securities laws and common law fraud.

principal plus $29,008.26 unpaid interest) evidenced by the demand note and secured by deed of trust on the apartment complex, that foreclosure proceedings had been initiated and public auction scheduled, that stay of lien enforcement would cause them irreparable harm, that no plan of arrangement would be accepted by the creditors, and that the Chapter XII petition was filed solely to prevent the foreclosure sale and not out of desire for rehabilitation.

Cedar Bayou answered the complaint to annul the stay, raising three defenses. First, it alleged that the requested relief could not be granted because Shamah and Gumenick had not filed a proof of claim. Second, it denied the validity of the debt and deed of trust, denied that irreparable harm would be caused by the stay, and denied that the Chapter XII petition was motivated by purposes other than rehabilitation. Third, it alleged that the demand note was obtained through a continuing course of fraud as detailed in its civil complaint.

Shamah, Gumenick and the Trustee moved to strike the defenses in the answer, following which Cedar Bayou filed its own complaint in Bankruptcy Court under Rule 12–60(a)(2) to determine the validity of the lien. Concluding that on a creditor's complaint to annul the stay it had no jurisdiction over a debtor's challenges to the validity of the lien, rather than defenses going to the merits of lifting of the stay, the Bankruptcy Court granted the motion to strike defenses. It then vacated the automatic stay without hearing. Cedar Bayou appeals that decision.

### III.

Affording the debtor a reprieve from lien enforcement proceedings is essential to the Chapter XII scheme of restoration. Unlike Chapter XI or straight bankruptcy proceedings, this Chapter is aimed at secured creditors and even provides a means to bind non-assenting secured creditors to a plan of arrangement. A creditor who could foreclose on an essential asset before acceptance of the plan could thus frustrate a debtor's opportunity to present an acceptable plan of arrangement and the very purpose of Chapter XII. On the other hand, a creditor precluded from his foreclosure remedies could suffer irreparable harm by delay if the debtor had no reasonable likelihood of rehabilitation and filed under Chapter XII only to prevent foreclosure on his property.

Rule 12–43 accommodates these competing interests by providing for automatic stay of lien enforcement proceedings upon filing of a petition, but providing the creditor with an expedited hearing to annul or modify the stay. The burden of seeking relief from the stay rests with the creditor by filing an adversary complaint with the bankruptcy court. Rule 12–43(d). On this issue, the burden of persuasion is on the debtor to demonstrate to the court that it needs and is entitled to continuation of the stay of lien enforcement proceedings. *Id.*

Cedar Bayou contends that this procedure necessarily contemplates adjudication of the validity of the creditor's lien, for that is a critical factor in the equities of lifting or continuing the stay. The creditors, on the other hand, contest the bankruptcy court's jurisdiction to make such a determination when they have neither submitted to the court's summary jurisdiction nor otherwise waived their objection, and they argue that the claims of fraud are irrelevant to the limited relief they seek from the court under Rule 12–43(d).

The meager case law on point is somewhat inconsistent. In *In re Groundhog Mountain Corp.*, 1 Bankr.Ct.Dec. 923 (S.D. N.Y.1976), the Bankruptcy Court for the Southern District of New York determined that it lacked jurisdiction over a debtor's defenses and counterclaims raised in answer to a creditor's complaint to annul a Rule 11–44 automatic stay (the Chapter XI counterpart to a Rule 12–43 stay). The Court reasoned that, although the bankruptcy rules required the filing of an adversary complaint according to the Federal Rules of Civil Procedure to seek relief from the

stay,[3] the action was more akin to a motion for relief from injunction and did not state a "claim" which would support independent defenses and counterclaims under Federal Rules 12(b) and 13. *Accord, In re Essex Properties, Ltd.,* 430 F.Supp. 1112 (N.D.Cal. 1977).[4] In *Overmyer,* however, the court indicated that the debtor could get the issue of validity of the lien before the bankruptcy court by filing its own complaint to determine the validity of the lien. 1 Bankr.Ct. Dec. at 994, n. 2.

Although Chapter XII differs from Chapter XI in that it is designed to reach secured creditors in the plan of arrangement, the Bankruptcy Court for the Southern District of New York applied the reasoning of *Groundhog Mountain* and *Overmyer* (Chapter XI cases) to Chapter XII actions to lift a Rule 12–43 stay. *In re Marietta Cobb Apartments Co., Inc.,* 3 Bankr.Ct.Dec. 720 (S.D.N.Y.1977). The court thus struck debtor's defenses and counterclaims challenging the validity of the lien, stating they were "unrelated" to the relief requested, that is, the lifting of the stay. In *Marietta Cobb Apartments,* however, the court noted that the debtor had also filed its own complaint to determine the validity of the lien. The court held that the amount of equity the debtor had in the property was relevant to the plan of arrangement and that the issue should be part and parcel of the Chapter XII process, including the motion to lift the stay. It therefore concluded it had summary jurisdiction to determine the validity of the lien and permitted the debtor to offer evidence on the issue in the hearing on the action to vacate the stay, even though the substance was identical to the defenses and counterclaims stricken from the debtor's answer to the creditor's motion to annul the stay. 3 Bankr.Ct.Dec. at 727.

In two other cases, courts have addressed the validity of the secured creditor's lien on actions to vacate the automatic stay. In *In re Consolidated Motor Inns,* 1 Bankr.Ct.Dec. 1526 (N.D.Ga.1975), before reaching the equities of permitting the creditor to proceed with reclamation of the debtor's property, the court determined whether the lease of the property was a security agreement. And, in *In re Sixth Avenue Investment and Development Co.,* 2 Bankr.Ct.Dec. 1222 (S.D.Cal.1976), the court reached a usury defense on the action to vacate the Rule 12–43 stay, without discussion of the jurisdictional question.

The purpose of Rule 12–43 appears to this Court to be inconsistent with a full, dispositive adjudication of the validity of the creditor's lien, for it is intended to afford the creditor an expedited means to obtain relief from a stay which may cause irreparable harm, and it mandates that the bankruptcy court set the matter for hearing at the earliest possible date. The procedure has been analogized to an expedited hearing on preliminary injunction following entry of a temporary restraining order. *See* 14A *Collier on Bankruptcy* ¶ 12–43.05, at 12–43–20 through 23.

Permitting full discovery on the question of validity of the lien would defeat the Rule 12–43(d) mandate of prompt hearing, *In re White Birch Park, Inc.,* 443 F.Supp. 1342, 1345–46 (E.D.Mich.1978). On the other hand, forcing final adjudication of a complex and critical issue without the opportunity for discovery and proper preparation would be unfair to all. Furthermore,

**3.** Bankruptcy Rule 12–60(a)(5) incorporates Part VII of the Bankruptcy Rules to govern procedures to obtain relief from a stay under Rule 12–43. Part VII, § 701 *et seq.,* in turn, largely incorporates the Federal Rules of Civil Procedure.

**4.** The Court in *Essex Properties* concluded that Bankruptcy Rule 928 made it clear that the Chapter XII Bankruptcy Rules could not be used to expand the *jurisdiction* of the bankruptcy court, and thus the bankruptcy court could only have summary jurisdiction of matters over which a bankruptcy court traditionally may exercise summary jurisdiction. The Court did not consider whether Congress intended to confer greater jurisdiction under Chapter XII than that conferred in straight bankruptcy by the difference in *substantive* provisions of Chapter XII and its design to reach secured creditors. *See* note 6 *infra.* The Court did, however, recognize the right of the debtor to introduce at the Rule 12–43 hearing evidence of the extent of his equity in the mortgaged property.

lengthy litigation would frustrate the immediate objective of preventing irreparable harm by operation of the stay.

■ Although dispositive litigation is not contemplated by Rule 12–43, nevertheless, claimed invalidity of the creditor's lien would be a pertinent factor in the court's equitable determination of whether to continue or to annul the stay. The factors most commonly identified as considerations influencing the court's decision are: 1) whether the secured creditor will suffer irreparable injury by the stay, 2) whether the property subject to foreclosure is essential to an acceptable plan of arrangement, and 3) the likelihood of rehabilitation of the debtor within a reasonable time. *In re Marietta Cobb Apartments Co., supra,* 3 Bankr.Ct.Dec. at 725; *In re Consolidated Motor Inns, supra,* 1 Bankr.Ct.Dec. at 1531; W. Norton, *Real Property Arrangements,* §§ 14–2 through 14–5 (1977). The balance of harm and rehabilitative objectives of the Chapter are also pertinent. *See In re Groundhog Mountain Corp., supra,* 1 Bankr. Ct.Dec. at 925. The factors to be considered, however, are not rigidly delineated and should vary with the circumstances of each case, *see In re Triangle Inn,* 2 Bankr. Ct.Dec. 1670 (E.D.Va.1976), and any matter relevant to the equities of continuing or lifting the stay would be a proper consideration for the court. The fact that the lien is subject to a genuine dispute, the nature of the dispute, and the likelihood that the debtor will prevail in challenging the lien, would be relevant factors in the balance of the equities. Cedar Bayou should therefore be permitted to offer evidence that the lien was obtained through a course of fraud in its effort to demonstrate to the Court that the equities favor continuing the stay, although as in a request for preliminary injunction, the Court will not make final findings thereon, as the evidence may be limited by the expedited nature of the proceedings.

■ In many cases, however, it may be judicially expeditious and consistent with the purpose of Rule 12–43 to advance the final determination of the validity of a lien to the hearing on annulment of the stay. When a debtor disputes the validity of a claim, the court is placed in the position of deciding the validity sooner or later, either on the creditor's proof of claim or the debtor's complaint to determine validity. When final adjudication would not require discovery or other pre-hearing delay nor lengthy litigation which would preclude speedy relief, then judicial economy would be best served by advancing that determination to the Rule 12–43 hearing, without disservice to the objectives of Rule 12–43. This procedure, in essence, was employed by the court in *Marietta Cobb Apartments* and would be compatible with the results in *Consolidated Motor Inns* and *Sixth Avenue Investment and Development.*

■ In some cases, expediency may be best served by the bankruptcy court's deferral to a state or federal court for litigation of lien validity. In those extraordinary situations in which the question of validity would require or is dependent on complex and lengthy litigation pending in state or federal court, the issue could not be adequately addressed in bankruptcy court given its facilities and schedule, and trial would be sooner reached in the other forum, the bankruptcy court could modify the automatic stay to permit proceedings on the lien but continue to stay the foreclosure sale. It could then make a determination of validity based on the record created in the state or federal court, and proceed with arrangement proceedings accordingly. *See In re White Birch Park, Inc., supra.*[5]

---

5. The court in *White Birch Park* precluded evidence of fraud as to the loan in the Rule 11–44 hearing. The court emphasized that in a Chapter XI proceeding, the bankruptcy court is "limited to an arrangement of unsecured debts and does not have the power to affect or to set aside the claim of a secured creditor." In Chapter XII proceedings in which the court does reach secured creditors, evidence of fraud in obtaining the secured interest would be a factor relevant to the equities of lifting the stay. Although the issue of fraud may be litigated in state court, the fraudulent creditor could tie up an essential asset and unduly delay and possibly frustrate entirely the debtor's hopes of rehabilitation under Chapter XII.

■ The creditors here object to any determination of validity of the lien without their submission to the jurisdiction of the bankruptcy court by proof of claim. Under our analysis, however, any impropriety in determination of lien validity in a Rule 12–43 hearing is a procedural limitation inherent in the Rule, rather than an inherent limitation on the summary jurisdiction of a bankruptcy court under Chapter XII. The substantive scheme created by Congress in Chapter XII necessarily confers somewhat greater jurisdiction than in traditional bankruptcy procedures because the Chapter is designed to reach creditors not ordinarily affected in traditional bankruptcy, and the object is to restore, not dismantle, the debtor.[6]

■ In *In re Decker,* 465 F.2d 294 (1972), however, a Chapter XII appeal, the Third Circuit applied the straight bankruptcy rule that once foreclosure proceedings are commenced against a bankrupt's property, the bankrupt is no longer in possession and the bankruptcy court is deprived of jurisdiction over it. *Contra, In re Colonial Realty Investment Co.,* 516 F.2d 154 (1st Cir. 1975). *See* W. Norton, *Real Property Arrangements,* Part 13. The court in *Decker* did not discuss the language of 907. The instant case is distinguishable in that non-judicial foreclosure under deed of trust was apparently utilized and the property was in the possession of a trustee, rather than in the constructive possession of the court in a judicial foreclosure. Given the language of Section 907 vesting the debtor with the rights of the trustee in possession and to immediate possession of the property, we believe *Decker* would not be extended to this case.

■ Cedar Bayou's second and third defenses in its answer to the creditors' complaint to annul the automatic stay were therefore properly raised under Federal Rule of Civil Procedure 12(b) as defenses to the claimed relief, and the bankruptcy court should have afforded the opportunity for hearing on the defenses. On remand for hearing, the bankruptcy court will have broad discretion in lifting, modifying or continuing the stay as the equities determine under its findings. Whether to advance the merits of debtor's complaint to determine the validity of the lien is also a matter within the discretion of the court, depending on whether such adjudication could be accomplished consistently with the objective of Rule 12–43 of affording expedited relief. Proper considerations for the Court in fashioning appropriate relief would include the irreparability of harm suffered by the creditors as a result of the stay, the balance of harm, the rehabilitative objectives of Chapter XII and whether debtor has a reasonable likelihood of rehabilitation within a reasonable time, the essentiality of the property to a successful plan of arrangement, whether the lien is genuinely disputed by the debtor, the likelihood of debtor's success on the merits of such dispute, and any other matter pertinent to the equities of any relief sought.

An appropriate Order will be entered.

---

**6.** As noted previously *supra,* at 280, Section 811 of Chapter XII confers exclusive jurisdiction in the bankruptcy court over the debtor and his property, wherever located. Section 907 vests the debtor with immediate rights to possession of the property and with the rights of any trustee or mortgagee in possession. Section 873 provides that a confirmed plan of arrangement is binding on all creditors, whether or not they have filed claims, and that distribution shall be made to those creditors whose claims have been filed and allowed or whose claims are not listed as contingent, unliquidated or disputed by the debtor. And, Section 861(11) provides a cramdown provision binding even non-assenting creditors who are affected by the plan of arrangement. This scheme reveals a Congressional intent to empower bankruptcy courts to affect creditor's rights in debtor's property, even without their submission to the court's jurisdiction by proof of claim.