598 F.2d 783
 5 Bankr.Ct.Dec. 162, Bankr. L. Rep. P 67,165
 In the Matter of John C. ROLOFF, Sr., Debtor in No. 78-2394.
In the Matter of Patricia ROLOFF, Debtor in No. 78-2395.
Appeal of John C. ROLOFF, Sr., and Patricia Roloff, his wife.
 Nos. 78-2394, 78-2395.
 United States Court of Appeals,
Third Circuit.
 Argued April 2, 1979.
Decided April 26, 1979.
 
 Kelly T. Young, Philip Stripling (argued), Farr, Reifsteck & Wolf, Haddon Heights, N.J., for appellants.
 Paul Mainardi (argued), Brown, Connery, Kulp, Willie, Purnell & Greene, Haddonfield, N.J., for Audubon Savings & Loan Assoc.
 Before ADAMS, HUNTER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This appeal presents a question regarding the summary jurisdiction of a bankruptcy court under Chapter XII of the Bankruptcy Act.[1] Specifically, the debtors seek to attack a state court foreclosure judgment by filing an affirmative defense and counterclaim relating to the merits of that judgment, in response to a secured creditor's complaint to vacate a stay in proceedings before a bankruptcy judge. The district judge held that the bankruptcy court is without jurisdiction to hear affirmative defenses and counterclaims in such circumstances. We agree.
 
 I.
 
 2
 Appellants, John and Patricia Roloff, are debtors who, on February 15, 1977, filed a Chapter XII petition for a real property arrangement. Under Bankruptcy Rule 12-43(a) the filing of this type of petition operates as an automatic stay of any proceeding against the debtors or of the enforcement of any judgment against them. Appellee, Audubon Savings & Loan Association, the holder of a first mortgage on the Roloffs' house, had begun foreclosure proceedings on the mortgage in New Jersey state courts on October 21, 1976. It had succeeded in obtaining a default judgment against the Roloffs in the amount of $32,077.23 on January 6, 1977, almost six weeks before the debtors filed their Chapter XII petition.[2] A foreclosure sale was scheduled for March 4, 1977, and it was this sale that was automatically stayed by the filing on February 15, of the Chapter XII petition.
 
 
 3
 In order to execute upon its state court judgment, Audubon, pursuant to Bankruptcy Rule 12-43(d), filed a complaint requesting the Bankruptcy Court to vacate the automatic stay, alleging that the value of the mortgaged property was less than the amount of the liens against it, and that there was, therefore, no equity in the property. In their answer, the Roloffs denied that there was insufficient equity to protect the interest of Audubon, the secured creditor. However, the Roloffs went further in their opposition to the motion to lift the stay. They asserted an affirmative defense grounded on estoppel, filed a counterclaim attacking Audubon's right to foreclose on the property, and sought damages as well.[3] Later, debtors attempted to amend their counterclaim to include violations of the Truth in Lending Act. Audubon moved to strike the affirmative defense and counterclaim, arguing that these were not responsive pleadings to its motion to vacate the stay. The bankruptcy judge denied Audubon's motion to strike, permitted the amendment of the counterclaim,[4] and ordered discovery and trial. He concluded that the mortgaged property was within his summary jurisdiction and that, in any event, Audubon had consented to that jurisdiction by filing its complaint to vacate the automatic stay.[5]
 
 
 4
 The district court, upon reviewing the order of the bankruptcy judge,[6] reversed, holding that affirmative defenses and counterclaims relating to the merits of the foreclosure action are not properly raised in a proceeding for relief from an automatic stay, and that the Bankruptcy Court has no summary jurisdiction to hear such claims.
 
 II.
 
 5
 Section 411 of the Bankruptcy Act, 11 U.S.C.A. § 811, vests the Bankruptcy Court with "exclusive jurisdiction of the debtor and his property." It provides:
 
 
 6
 "Where not inconsistent with the provisions of this chapter, the court in which the petition is filed, shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located."
 
 
 7
 The initial question raised in this appeal is whether the property already foreclosed upon by Audubon is within the jurisdictional grant of § 411.
 
 
 8
 In In re Decker, 465 F.2d 294 (3d Cir. 1972), this Court answered that precise question, concluding that the previous litigation in a state court deprived the bankruptcy court of summary jurisdiction to determine the ownership of property on which a prior foreclosure proceeding had been instituted:
 
 
 9
 Since the foreclosure proceeding vested the state court with constructive possession of the mortgaged property prior to the filing of the bankruptcy proceedings, the Bankruptcy Court was deprived of summary jurisdiction and it must be held to have erred in exercising such jurisdiction.[7]
 
 
 10
 In the present case, not only had the state foreclosure proceedings been instituted prior to the filing of the debtors' petition, the foreclosure proceedings had resulted in a judgment. Under Decker it is apparent that the bankruptcy court is without jurisdiction to relitigate the merits or amount of such a judgment.
 
 
 11
 It is true that the Decker decision applies traditional straight bankruptcy jurisdictional law to Chapter XII, one of the rehabilitation chapters of the Act,[8] and thus arguably diverges from the more protective scheme of that Chapter.[9] As a preliminary matter, it should be noted that, whatever arguments might be made against the application of Decker here, under the rules of this Court we are bound by that decision, until such time as the full court En banc may wish to reconsider it.[10] But we are disinclined to reject Decker in any event.
 
 
 12
 Chapter XII, like the other rehabilitation chapters in the Bankruptcy Act, is designed to provide an opportunity for the preservation and restoration of a debtor, not a means by which the debtor may be speedily dismantled. In pursuit of this end, the bankruptcy court is given certain powers that may be exercised to preserve the status quo until a real property arrangement may be settled upon. Included are jurisdiction to lift or continue automatic stays,[11] to grant injunctive relief,[12] and when necessary to oust mortgagees in possession.[13] But these are specific powers of an equitable nature designed to allow the debtor time to reorder his affairs.[14] They contain no language indicative of an extension of the substantive summary jurisdiction of the bankruptcy court. It does not follow, then, that Congress intended to give the bankruptcy court the authority to adjudicate once more, in a full trial, the merits and amount of each lien already determined to be owed to the secured creditor. Any such new and broad adjudicatory power must be found in the language of § 411, Supra, which gives jurisdiction only over the debtor and his property wherever located, not over property already in the constructive possession of another court. The words "wherever located" would appear to expand Territorial jurisdiction allowing the court's process to run beyond the district in which it sits rather than to divest all other courts of jurisdiction over property already before them. This is in essence the stance we took in Decker. It is a position that has been ably defended by several commentators,[15] and we are not prepared to discard it now.
 
 III.
 
 13
 The Roloffs suggest that the rule in Decker may be circumvented, however, because here Audubon consented to the jurisdiction of the bankruptcy court by filing a complaint to vacate the stay. With the adoption of the new Bankruptcy Rules in 1973 it became necessary for a secured creditor to file a Complaint in order to lift a stay. And, the Roloffs claim, the new rules incorporate into adversary proceedings the law of affirmative defenses and counterclaims of the Federal Rules of Civil Procedure.[16] It might be argued, then, that Audubon's complaint must be treated as a "claim", thus entitling debtors, such as the Roloffs, to bring counterclaims against the party asserting the claim as a matter of federal procedural law and vesting the bankruptcy court with summary jurisdiction, in any case, on a theory of implied consent.[17]
 
 
 14
 This argument was accepted by the bankruptcy court. It relied on Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), which holds that when a creditor files a "claim" with the bankruptcy court it subjects itself by implied consent to that court's summary jurisdiction on all counterclaims set forth by the debtor that arise out of the same transaction. We are in accord with the district court in rejecting the proffered analogy to Katchen and the effort to expand the bankruptcy court's substantive authority through the device of a counterclaim. Katchen involved actual claims for payment of rent due and the unpaid balance on a note seeking distribution from the bankrupt estate. Counterclaims challenging the propriety of the requested distribution necessarily required the bankruptcy court charged with the bankrupt estate to determine what payment, if any, the creditor was entitled to receive. Here, in contrast, the secured creditor does not seek affirmative relief from the bankruptcy judge but desires only to be free from restraint in executing its previously obtained judgment. We do not consider this request to be sufficient to justify a finding of jurisdiction by consent.[18]
 
 
 15
 In declining to apply Katchen, the district court followed the reasoning of In re Essex Properties, Inc., 430 F.Supp. 1112 (N.D.Cal.1977). It concluded that the filing of a complaint in order to vacate the stay under Rule 12-43 did not constitute a "claim" against the debtor's property so as to trigger the right of the debtor to counterclaim or to bring the merits of the foreclosure within the summary jurisdiction of the Bankruptcy Court. In Essex Properties, the debtor responded to a Rule 12-43 complaint with affirmative defenses going to the merits of the prior foreclosure, including defenses predicated upon usury, negligence, breach of contract, and fraud. The district court agreed with the order of the bankruptcy judge that struck these defenses, and held:
 
 
 16
 (1) that appellee's complaint to vacate the stay did not constitute a claim within the meaning of Rules 12(b) or 13 of the Federal Rules of Civil Procedure; (2) that the appropriate forum for appellant's affirmative defenses and counterclaims was the trial court in the foreclosure action; and (3) that the defenses and counterclaims did not direct themselves to the validity of appellee's security interest and other matters not before the bankruptcy court.[19]
 
 
 17
 The Essex court thus rejected the contention that the new Bankruptcy Rules had expanded the jurisdiction of the bankruptcy court to include such affirmative defenses or counterclaims.[20]
 
 
 18
 We are persuaded, as was the district court, that Essex Properties sets forth a correct statement of the law. We do not believe that, by designating as a "complaint" the motion for relief from the stay, the drafters of the Bankruptcy Rules anticipated that bankruptcy judges would be authorized to conduct trials on the merits of particular liens whenever relief from a stay was sought. As one commentator has noted:
 
 
 19
 The debtor will frequently have, or be able to devise, . . . counterclaims against the secured creditor. Fraud, negligence, breach of contract, usury, interference with perspective business advantage, securities fraud, antitrust violations all are claims that a debtor might raise to challenge the debt. Allowing a debtor to raise these real or imagined claims, when a creditor files a complaint for relief from the automatic stay, could flood the bankruptcy courts with complex trials including jury trials on every conceivable tort and contract counterclaim. Such a result does not accord with either the essential nature of a complaint for relief from stay, that of a hearing on a preliminary injunction, or with the intention of the drafters of the Bankruptcy rules, who gave calendar priority to these hearings.[21]
 
 
 20
 The complaint to vacate the stay was not designed to initiate full adjudication on the merits of prior liens filed by a secured creditor, and it was error for the bankruptcy judge to consider affirmative defenses and counterclaims going to the merits and amount of Audubon's judgment.[22]IV.
 
 
 21
 In conclusion, it is important to emphasize that the refusal to permit a bankruptcy court to adjudicate affirmative defenses and counterclaims going to the substance of a prior foreclosure proceeding in no way undermines the authority of that court to decide whether to continue the automatic stay. The bankruptcy judge must determine whether the Roloffs have any equity in the foreclosed property. He must also decide whether the continuation of the stay will cause undue harm to Audubon. Finally, it is necessary that he evaluate whether there is a reasonable possibility of successful rehabilitation of the bankrupt and how such prospect will be affected should the encumbered property be withdrawn from the estate. These are the considerations that traditionally support a determination to vacate or retain an automatic stay in these cases, and we do not understand Audubon to question their relevance here. As we recognized in Decker, the lack of summary jurisdiction to decide the ownership of the foreclosed property does not affect the authority of the court to exercise equitable powers specifically granted to it in Chapter XII.[23] As for the Roloffs' assertion that they should be allowed to attack the prior judgment on the merits, it is enough to say that whatever right they may have to litigate that question must be exercised elsewhere and not in response to a complaint to vacate an automatic stay.[24]
 
 
 22
 The judgment of the district court will be affirmed.[25]
 
 
 
 [1]
 11 U.S.C. §§ 801-926 (1970)
 
 
 [2]
 The Roloffs were not without an opportunity to contest the foreclosure proceedings. They were served and appeared by counsel in the foreclosure action. Although they were given an extension of time so as to answer Audubon's complaint, they never filed an answer. Slip opinion of the district court at 2
 
 
 [3]
 The Roloffs alleged in their counterclaim that Audubon was liable for the wrongful failure of their mortgage disability insurance carrier to honor their disability claim. Audubon answered that this was a question that might have been resolved by the New Jersey state court when the foreclosure was before it, and was apparently a dispute between the Roloffs and the third party insurance company. The gravamen of this dispute appears to be whether the "disabilities" covered by the insurance included the disability of alcoholism experienced by one of the Roloffs
 
 
 [4]
 The bankruptcy judge also joined the insurance carrier, see note 3 Supra, as a third party defendant
 
 
 [5]
 As a general rule jurisdiction may not be conferred by the consent of the parties. Under § 2 of the Bankruptcy Act, 11 U.S.C. § 11 (1970), however, consent, whether express or implied, may serve as a basis for the bankruptcy court's summary jurisdiction. Bryan v. Bernheimer, 181 U.S. 188, 21 S.Ct. 557, 45 L.Ed. 814 (1901); Wymard v. McCloskey & Co., 342 F.2d 495 (3d Cir. 1965)
 
 
 [6]
 The district court may, in its discretion, review an interlocutory order of a bankruptcy judge. See Willyerd v. Buildex Company, 463 F.2d 996, 1001 (6th Cir. 1972); Sulmeyer v. Pfohlman, 329 F.2d 915, 917 (9th Cir. 1964). See also 13 Collier on Bankruptcy, 14th ed., § 801.06, at 8-7 (1976)
 
 
 [7]
 465 F.2d at 297
 
 
 [8]
 Chapters I through VII of the Acts are the "straight" bankruptcy chapters. Their purpose is to provide guidelines for liquidating a debtor's non-exempt assets for the benefit of his creditors. The later chapters Chapter VIII (railroad reorganization), Chapter IX (municipal reorganization), Chapter X (corporate reorganization), Chapter XI (general business arrangement), Chapter XII (real property arrangement) and Chapter XIII (wage earner arrangement) are to a greater or lesser degree "rehabilitation" chapters, designed to allow the financial revitalization of debtors
 
 
 [9]
 There is speculation among both courts and commentators that at least some expansion of the substantive jurisdiction of the bankruptcy court results under Chapter XII and the other rehabilitation chapters. See 9 Collier, On Bankruptcy, § 3.01; In re Cedar Bayou, 456 F.Supp. 278 (W.D.Pa.1978). Much of the debate centers on whether title to real estate, as distinct from possession of real estate, is sufficient to vest the bankruptcy judge with summary jurisdiction. See generally, In re Pittsburgh Penguins, 598 F.2d 1299 (3d Cir. April 4, 1979). Compare Collier, supra with 11 Remington, Bankruptcy, § 4358. The question here, of course, is whether Chapter XII extends the bankruptcy court's jurisdiction to include property that under straight bankruptcy law is in the constructive possession of another court
 
 
 [10]
 Internal Operating Procedures of the Third Circuit 25 (VIII C)
 
 
 [11]
 11 U.S.C. § 828 (1970)
 
 
 [12]
 11 U.S.C. § 814 (1970)
 
 
 [13]
 11 U.S.C. § 907 (1970). Two of the cases, noted by the Roloffs, that have expressed concern about Decker have done so in the context of considering turnover orders under this section. See In re Colonial Realty Investment Co., 516 F.2d 154 (1st Cir. 1975); In re Cedar Bayou, 456 F.Supp. 278 (W.D.Pa.1978). Although Decker Makes no reference to § 907, that case does not deprive the bankruptcy judge of jurisdiction to issue turnover orders. Such orders are within the specific grants of equitable authority necessary to effectuate the purposes of Chapter XII, and are comparable to stays or injunctions. See In re Flying W. Airways, Inc., 442 F.2d 320, 323 (3d Cir. 1971)
 We do not read Colonial Realty to countenance the creation of broad new adjudicatory power to deal with the merits of prior judgments, when no such summary jurisdiction heretofore existed. Moreover, Colonial Realty has itself been criticized as too harsh in its effect on secured creditors. See 3 Cowans, Bankruptcy Law and Practice, § 1055. As for Cedar Bayou, to the extent that that decision acknowledges the existence of such a new jurisdictional reach, it is inconsistent with Decker and the result we reach today.
 
 
 [14]
 The importance and existence of these powers is recognized in Decker even as to property over which the court has no summary jurisdiction. In re Decker, 465 F.2d 294, 297 (3d Cir. 1972)
 
 
 [15]
 See 11 M. Remington, Bankruptcy § 4358; Peitzman & Smith, The Secured Creditor's Complaint: Relief from the Automatic Stays in Bankruptcy Proceedings, 65 Cal.L.Rev. 1216, 1219-23 (1977)
 
 
 [16]
 See Bankruptcy Rules 712 and 713
 
 
 [17]
 If the complaint is determined to be a "claim," summary jurisdiction would exist by consent. See Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Appeal of Copeland, 531 F.2d 1195, 1209 (3d Cir. 1976); In re Carnell Construction Corp., 424 F.2d 296, 298 (3d Cir. 1970)
 
 
 [18]
 As the district court noted:
 Conceptually a petition to vacate a stay imposed by the bankruptcy court is unlike the claim involved in Katchen v. Landy or a petition for reclamation. The latter applications seek affirmative relief from the bankruptcy court; they ask it to turn the debtor's money or property over to the claimant. By their very nature they require the bankruptcy court to decide the merits the validity and amount of the claim. In effect, the bankruptcy court is asked to render judgment for the claimant and to execute the judgment. But an application to vacate a stay is defensive in nature. It does not seek affirmative relief from the bankruptcy court but asks it to remove a bar to the secured creditor's proceeding elsewhere. If the bankruptcy court vacates its stay the secured creditor must litigate his claim elsewhere and if it prevails seek enforcement of its judgment elsewhere.
 Slip opinion of the district court at 5.
 
 
 [19]
 430 F.Supp. at 1114. Essex Properties is not without precedent. See In re The Overmyer Co., 2 Bankr.Ct.Dec. 992, 994 (S.D.N.Y.1976); In re Groundhog Mountain Corp., 1 Bankr.Ct.Dec. 923, 924 (S.D.N.Y.1975)
 
 
 [20]
 The Essex court cited Bankruptcy Rule 928, which states
 "Jurisdiction Unaffected. These rules shall not be construed to extend or limit the jurisdiction of courts of bankruptcy over subject matter."
 
 
 [430]
 F.Supp. at 1115
 
 
 [21]
 Peitzman & Smith, Supra note 14, at 1241 (citations omitted)
 
 
 [22]
 Moreover, we note that this result is congruent with the view set forth by the drafters of the Revised Bankruptcy Act of 1978, to be effective on October 1, 1979, 11 U.S.C. §§ 101-151326 (Supp.1979). In their notes to § 362 of the new legislation, the drafters specifically adopt the Essex Properties analysis:
 This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims, against the creditor, which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters. This approach is consistent with that taken in cases such as In re Essex Properties, Ltd., 430 F.Supp. 1112 (N.D.Cal.1977), that an action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert counterclaims. . . . However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing.
 
 
 [23]
 465 F.2d at 297. Moreover, to the extent that the bankruptcy judge believes that Audubon's lien will be invalidated or reduced in a different forum it may affect his judgment on the Roloffs' equity in the property. See In re Sal Amato, Inc., 1 Bankr.Ct.Dec. 954 (D.Conn.1975) (S. Seidman, Bankr. Judge). Thus, although the Roloffs cannot attack the judgment by counterclaiming before the bankruptcy judge, they may plead facts that are relevant to the equities of continuing the stay, and one such fact would be any flaw in Audubon's claim
 
 
 [24]
 It has been suggested that the judgment in the foreclosure action is Res judicata. As the district court observed: "A judgment by default, like any other judgment, is conclusive between the parties as to the cause of action upon which the action underlying the judgment is based." Slip opinion of the district court at 7. In view of our disposition of this appeal we have no occasion and indeed it would be improper for us to consider what relief may be available to the Roloffs in the state court or elsewhere. See In re McMillan, 4 Bankr.Ct.Dec. 527 (3d Cir. 1978); Haize v. Hanover Ins. Co., 536 F.2d 576 (3d Cir. 1976). See also Heiser v. Woodroff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946)
 
 
 [25]
 On this appeal, the Roloffs, for the first time, claim that by answering the counterclaim, Audubon has submitted to the bankruptcy court's summary jurisdiction. This argument is rejected on two grounds: first, the Roloffs did not raise this issue before either the bankruptcy court or the district court. Second, if the complaint filed by Audubon did not, as we hold here, subject Audubon to the bankruptcy court's summary jurisdiction, A fortiori its answer to Roloff's counterclaim cannot