*1047 OPINION OF THE COURT
WEIS, Circuit Judge.
The debtor in this bankruptcy proceeding contends that the cram down provisions in the Act could have been utilized to make a Chapter XII arrangement digestible.[1] Furthermore, because the district court misconstrued the statutory remedy and did not hold a hearing on its plan, says the debtor, a continuation of the automatic stay against foreclosure was improperly denied. We conclude that the district court did not err in determining that an arrangement was not feasible and that foreclosure should not be delayed.
Union Deposit Center Equities Limited Partnership, the owner of a shopping center, filed a petition for reorganization under Chapter XII in February 1976. Industrial National Mortgage Company, holder of first and second mortgages on the premises, asked the court to lift the automatic stay against foreclosure proceedings. After hearings, the bankruptcy judge granted the request on September 21, 1978, and the district court affirmed. We denied a stay of the district court’s order pending this appeal.
Union Deposit is a limited partnership that was formed for the purpose of constructing and operating a shopping center in Harrisburg, Pennsylvania. In December 1973, it borrowed $6,700,000 from Industrial National, with interest at 3% over prime, repayable in two years. The loan is secured by first and second mortgages on the shopping center. Union Deposit defaulted, and on February 2, 1976, Industrial National instituted foreclosure proceedings in the Court of Common Pleas of Dauphin County, Pennsylvania. Eight days later, Union Deposit filed its petition under Chapter XII of the Bankruptcy Act, which automatically stayed the foreclosure proceedings. Fed.R. Bankr.P. 12 — 43(d).
Union Deposit filed its proposed plan of arrangement on November 15, 1976. In December, Industrial National filed a complaint to modify the stay and permit foreclosure. Union Deposit filed a modified arrangement plan in February, a further amendment in June, and a final, modified version in November 1977. Hearings began on the complaint to lift the stay in August 1977 and continued intermittently through February 1978.
The bánkruptcy judge found that the shopping center was the debtor’s only asset, and that the total amount owing as of January 19, 1978 was $7,500,000, consisting of the principal sum of $6,700,000, accrued interest, and other fees and expenses. By the time his opinion was filed, the debt had increased.
The fair market value of the shopping center, as accepted by the bankruptcy judge, was $7,070,000. He found the space leased to first floor retail merchants to be decreasing, thus leading to a diminution in the value of the property. The mall had only one magnet store, of doubtful drawing power, and the layout and design were “wanting.” The earnings record was unimpressive, and while current expenses were being met, there was insufficient income to pay the ground rent. Moreover, the debtor did not have the ability to attract necessary resources.
Noting that three years had already elapsed, the bankruptcy judge concluded an arrangement could not be reached within a reasonable time. He therefore ruled that the debtor had failed to justify a continuation of the stay and authorized the plaintiff to proceed with foreclosure.
On appeal, the district court concluded that the “period of unreasonable delay [had to be] stopped,” because no plan of arrangement “[would] ever be possible,” and irreparable harm would be visited on Industrial National if the stay continued. It also approved the bankruptcy judge’s use of the capitalization of prospective earnings method to determine the value of the mall. The court also found no error in the bankruptcy *1048 judge lifting the stay before holding hearings on the latest plan of arrangement, since it was fatally flawed by the debtor’s inability to secure additional capital. The order of the bankruptcy judge, therefore, was affirmed.
The debtor has appealed that order, together with several others whose effect necessarily depends upon disposition of that dissolving the stay.
Chapter XII of the Bankruptcy Act, 11 U.S.C. §§ 801-926 (1976), provides a method for alleviating the financial difficulties of individuals or partnerships whose principal assets are real estate. To provide the distressed debtor time to devise a method for meeting its obligations, the bankruptcy rules provide for an automatic stay of all proceedings against him. Fed.R.Bankr.P. 12-43(a). The imposition of this stay, however, may work a hardship on secured creditors if diminution in the value of the collateral results. The creditor’s remedy is to file a complaint to terminate, modify, or condition the stay. In such a proceeding, the debtor has the burden of justifying the stay. Fed.R.Bankr.P. 12-43(d). In addition, such complaints must be given priority on the bankruptcy court docket. Id.
In defending against a creditor’s complaint, the debtor must meet four issues:
(1) Does the debtor have equity in the encumbered property;
(2) will the secured creditor suffer undue harm from a continuation of the stay;
(3) is there a reasonable prospect for a successful reorganization; and
(4) will the prospects for reorganization be affected by withdrawal of the encumbered property from the estate?
See In re Roloff, 598 F.2d 783, 789 (3d Cir. 1979). See also Peitzman & Smith, The Secured Creditor’s Complaint: Relief from the Automatic Stays in Bankruptcy Proceedings, 65 Cal.L.Rev. 1216 (1977).
The district court determined the first three of these issues adversely to the debt- or.[2] Union Deposit, however, contends that the finding of undue harm to Industrial National is not supported by the record. The debtor also argues that the bankruptcy judge erred in dissolving the stay before granting a hearing on its proposed plan, and misconstrued the appropriate standards for assessing the feasibility of a successful arrangement. Specifically, the debtor contends that the bankruptcy judge erred in deciding that Industrial National was entitled to receive cash in full for the amount of its debt.
We begin by noting the record supports the finding that the debtor had no equity in the property. In fact, the amount of the debt exceeded the going concern value of the realty, and the mail’s worth was declining, as demonstrated by the amount of unleased space.
Moreover, the decline in value did not promise to abate. The layout and design of the shopping center were “wanting.” The bankruptcy judge also found tenant delinquencies. Insofar as the management was concerned, he found “it definitely is no plus for the defendant.” Furthermore, interest payments continued to lag, because the cash flow was insufficient to meet them, as well as the operating expenses and ground rents. Prospects for future earnings were said to be speculative.
Thus, the record provides ample support for the findings the debt exceeded the collateral, and the growing disparity was unlikely to reverse itself. With no other resources available to the debtor to meet its obligations to Industrial National, and continuing deterioration in the conditions at the shopping center, loss to the mortgagee was inevitable.
The bankruptcy judge reviewed the possible means of protecting the security, such as posting indemnity bonds, providing additional collateral, or sequestering rents, and *1049 found none of these was feasible. As the district court phrased it, “Simply put, Defendant’s five-year speculation with the plaintiff’s funds has to be brought to an end as Chapter XII was not designed for the purpose of passing a debtor’s insolvency to the secured creditor.” We said in an analogous context, “A first mortgagee-creditor, especially one whose debt comprises the overwhelming bulk of the debtor’s aggregate liabilities, should not be kept in cold storage indefinitely while its security erodes, in the faint hope that some miracle may happen.” In re Holi-Penn, Inc., 535 F.2d 841, 848 (3d Cir. 1976). Although the debtor argues that the situation at the shopping center is improving and that income is increasing, we have not been persuaded that the factual findings of the district court are clearly erroneous.
We also find no merit in Union Deposit’s argument that the lower court erred in lifting the automatic stay without holding a hearing on the modified plan of arrangement. As noted above, the bankruptcy rules specify that a complaint to lift an automatic stay “shall take precedence over all matters except older matters of the same character." Fed.R.Bankr.P. 12-43(d). Union Deposit was not, as it contends, erroneously required to demonstrate at that hearing that its proposed plan could be confirmed. Rather, it had to demonstrate that there was a reasonable prospect for a successful reorganization. Since Union Deposit failed to meet this burden, we find no error in the lower court’s decision to lift the stay before it held a hearing on the proposed arrangement.
Moreover, we do not agree that the district court misconstrued the “cram down” provision of the Bankruptcy Act. 11 U.S.C. § 861(11). When this statutory means is used to overcome the objection of creditors who will not agree to a plan, the dissenting class must be given “adequate protection” for the realization of the value of its claims. Id.
Section 861(11) specifies four means of providing adequate protection for dissenting creditors, including the general one the parties agree is applicable here, § 861(ll)(d). The relevant statutory language is as follows:
“An arrangement . .. shall provide for any class of creditors which is affected by and does not accept the arrangement '... adequate protection for the realization by them of the value of their debts against the property ... affected by such debts, ... by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection.”
Id. § 861(ll)(d).
The district court held that where, as here, the debt exceeds the value of the security, the plan must provide the dissenting creditors with the going concern value of the collateral. This holding is challenged on two grounds. First, it is contended that the difference between the liquidation value and the going concern value of the collateral may be used to satisfy the claims of junior creditors. Assuming arguendo that this position is correct, however, no evidence was produced at the hearing to establish the liquidation value, and therefore, the burden of justifying the stay was not met.
The second contention is that under § 461(ll)(d) a reorganization plan may extend a mortgage at a reduced rate of interest. It is true that this has been done in certain circumstances. But in those situations, long term mortgages were the concern, unlike the problem in this case, where a short term loan was fully mature at the time Chapter XII proceedings began. Whatever the merits might be of extending the terms of a mortgage and adjusting the interest in circumstances where long term debt is involved, there is no justification for doing so here.
We do note that the bankruptcy judge used a going concern value rather than a liquidation figure in determining whether the debt exceeded the collateral. Thus, he gave the debtor the more advantageous appraisal. See In re Pembroke Manor Apartments, 547 F.2d 805 (4th Cir. 1977).
*1050 Having explored the feasibility of arrangement, the district court concluded that it was “not improper [for the bankruptcy judge] to avoid further useless, wasteful, unproductive hearings when it was clear that the proposed plan would not adequately protect the secured creditors but only produce delay.” The record adequately supports that ruling, and we find no error in the district court’s determination. See also Gardens of Cortez v. John Hancock Mutual Life Insurance Co., 585 F.2d 975 (10th Cir. 1978).
Finding no reversible error, we will affirm the judgment of the district court.

. This case arose before the effective date of the Bankruptcy Code, 11 U.S.C. §§ 101-151326 (Supp. III 1979). Thus, its predecessor, the Bankruptcy Act, 11 U.S.C. §§ 1-1103 (1976), applies. We will therefore refer to the Act and its applicable rules in the present tense.

. Obviously, since the realty was the only asset held by the debtor, the fourth criterion was satisfied.