In re Martin S. SHAPIRO, Bankrupt.

**MIDWEST MUTUAL INSURANCE CO., Plaintiff,**

v.

**Martin S. SHAPIRO, Defendant.**

**Bankruptcy No. 79–1789G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Aug. 23, 1982.

Faith R. Greenfield, Wexler, Weisman, Forman & Shapiro, Philadelphia, Pa., for plaintiff, Midwest Mut. Ins. Co.

Gary M. Schildhorn, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for bankrupt/debtor, Martin S. Shapiro.

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Although the Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1,

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

█ The issue at bench is whether we have jurisdiction under the Bankruptcy Act to consider the affirmative defenses and counterclaim raised by the bankrupt in his answer to plaintiff's complaint seeking to determine the nondischargeability of a debt allegedly owed the plaintiff by the bankrupt. We conclude that we have jurisdiction to determine the affirmative defenses and counterclaim in issue: (1) because the plaintiff, by filing a complaint to determine nondischargeability, consented to the summary jurisdiction of this court over those matters directly connected with the dischargeability question; (2) because the affirmative defenses and counterclaim direct themselves to a matter presently before this court—namely, the dischargeability question; and (3) because the bankruptcy court has exclusive jurisdiction to determine the nondischargeability of debts.

The facts of the instant case are as follows [1]: On September 24, 1979, Martin S. Shapiro ("the bankrupt") filed a voluntary petition in bankruptcy under the Bankruptcy Act ("the Act").[2] On January 28, 1981, the plaintiff, Midwest Mutual Insurance Co. ("Midwest"), filed a complaint, pursuant to Rule 409 of the Rules of Bankruptcy Procedure and sections 17(a)(2) and 17(a)(4) of the Act, seeking a determination of the nondischargeability of a debt allegedly owed by the bankrupt to Midwest. The complaint avers that this alleged debt arose through the bankrupt's embezzlement, misappropriation and defalcation of premiums that were to be held in trust by the bankrupt for Midwest pursuant to a 1976 general agency agreement ("Agency Agreement") entered into between Midwest and the Martin Shapiro Agency Inc. ("Agency"),

1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L.No.95–598, § 403, 92 Stat. 2683 (1978).

for which the bankrupt acted as chief executive officer. The complaint further avers that on May 17, 1976, the bankrupt personally agreed to guarantee the performance of the agency in accordance with the terms and obligations of the Agency Agreement.

On May 1, 1981, the bankrupt filed an answer containing affirmative defenses and a counterclaim to Midwest's complaint. The answer denies that the bankrupt should have held the premiums in trust for Midwest and further denies that the premiums should have been remitted to Midwest under the 1976 Agency Agreement. In addition, the three-count counterclaim alleges that: (1) Midwest breached a 1974 agency contract that it had entered into with the Agency and coerced the Agency into the 1976 contract that had onerous terms; (2) Midwest violated alleged legal obligations imposed by Maryland and New Jersey law to solicit and to offer renewal policies for the Agency; and (3) Midwest obtained the 1976 Agency Agreement through duress and fraud and that such contract was unconscionable and unreasonable. On June 17, 1981, Midwest filed a motion to dismiss the bankrupt's counterclaim on the ground that the bankruptcy court has no jurisdiction to determine the bankrupt's affirmative defenses and counterclaim. We conclude that the motion must be denied.

Section 17(c)(3) of the Bankruptcy Act provides:

> After hearing upon notice, the court shall determine the dischargeability of any debt for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof. A creditor who files such application does not submit himself to the jurisdiction of the court for any purposes other than those specified in this subdivision c.

11 U.S.C. § 35(c)(3).

In the instant case, Midwest contends that the last sentence of section 17(c)(3) deprives the bankruptcy court of summary jurisdiction to consider the merits of the affirmative defenses and counterclaim filed by the bankrupt in response to Midwest's complaint objecting to the dischargeability of a debt allegedly owed Midwest by the bankrupt. Midwest's contention means that, while invoking this court's jurisdiction to determine the nondischargeability of a debt allegedly owed to it, it may deny our power to examine the underlying transaction to determine whether the alleged debt was owing and the amount thereof. We reject this interpretation of section 17(c)(3) because it would make any accurate determination of dischargeability impossible.

■ Jurisdiction to determine whether an alleged debt will be dischargeable in bankruptcy is vested exclusively in the bankruptcy court. *In re Roberts*, 460 F.Supp. 88 (N.D.Ga.1978); 1A *Collier on Bankruptcy* ¶ 17.28A[3] at 1741 (14th ed. 1978). In addition, "the whole 'ball of wax' shall be handled in the bankruptcy court, upon complaint filed pursuant to Bankruptcy Rule 409(a)." *Id.* at ¶ 17.28A[4] p. 1742.4. Furthermore, if the bankruptcy court determines that a debt is nondischargeable, "it will decide the remaining issues, such as the amount of the indebtedness, and render judgment on the debt." *Id.*

■ Consequently, resolution of the dischargeability issue—more specifically, ascertaining whether the alleged debt would fall within the enumerated subsections of the Act relied on by Midwest— would necessitate that the bankruptcy judge consider the underlying transaction. By its very nature, a complaint to determine nondischargeability requires the bankruptcy court to decide the merits—the validity and the amount—of the claim. While a complaint to determine nondischargeability is not an "affirmative" action in that it does not seek distribution from the bankrupt estate, it does seek "affirmative" relief in that it requires the bankruptcy judge to determine what payment, if any, the claimant is entitled to receive. *See Matter of Roloff*, 598 F.2d 783 (3d Cir. 1979).

■■ In this regard, Midwest's reliance on *Roloff, supra*, to support its interpretation of section 17(c)(3) (N.T. 104) is inappropriate. *Roloff* dealt with affirmative defenses and counterclaims raised by the debtor in response to a creditor's complaint to vacate a stay. A complaint to vacate a stay, unlike a complaint to determine nondischargeability, is not designed "to initiate full adjudication on the merits of prior liens filed by a secured creditor." *Roloff*, supra, at 788. In contrast, a complaint to determine nondischargeability of an alleged debt, to reiterate, necessitates that the bankruptcy court make its determination of nondischargeability and, if necessary, that it determine the size of a nondischargeable debt, render judgment thereon and decide any remaining issues. Jurisdiction of the bankruptcy court extends as far as is necessary to make that determination.

■ Finally, while it is true, under section 17(c)(3), that a creditor who files a complaint to determine the nondischargeability of a debt does not subject himself to the jurisdiction of the bankruptcy court "for any other purpose," the creditor does, however, subject himself to the court's jurisdiction over those matters connected with the dischargeability question. 1A *Collier on Bankruptcy* ¶ 17.28A[4] at 1742.4 (14th ed. 1978). It is clear that the scope of the jurisdictional limitation imposed by section 17(c)(3) of the Act was not intended to include matters directly connected with the dischargeability question—such as, whether a debt is owed at all and, if so, the amount thereof. Rather, it appears that the jurisdictional limitation was aimed at matters collateral to the dischargeability question:

But by filing an application to determine the dischargeability of his debt, a creditor does not subject himself to the jurisdiction of the court for any other purpose. Thus, for example, by filing such application, he does not subject himself to the summary jurisdiction of the bankruptcy court *for the purposes of avoiding preferences, fraudulent transfers, and the like.* (emphasis added).

*See Bankruptcy Act and Rules* p. 63 (Collier Pamphlet Ed. Part I 1976).

■■ Midwest's alternative contentions are also without merit. Contrary to what Midwest asserts, a bankrupt does have standing to raise all available defenses and counterclaims when a creditor seeks to determine the nondischargeability of a debt. A complaint to determine the nondischargeability does not claim or concern any assets or property of the estate and, therefore, any right of action belongs to the bankrupt personally and not the trustee. The instant controversy is a case brought against the bankrupt as an individual only and not the estate or the trustee.

■ In addition, Midwest maintains, inconsistently, we think, that it may sue the bankrupt on his personal guarantee of the Agency's contract but deny him standing to contest the validity of that contract. We reject this contention and conclude that because Midwest sued the bankrupt (the sole shareholder of the Agency) individually on his personal guarantee of the contract in question, the right to raise affirmative defenses and counterclaims arising out of that contract is not derivative, but belongs to the bankrupt personally.

Finally, Midwest argues that the bankrupt's counterclaim fails to meet the mutuality of debt test of section 68(a) of the Bankruptcy Act. We find that section 68(a) of the Act is applicable since the setoff question, as presented in this case, goes only to the determination of whether any debt is owing at all.

Based on all the above, we will deny Midwest's motion to dismiss the bankrupt's counterclaim.