**In re PETTIBONE CORPORATION, et al., Debtors.**

**PORT TERMINAL RAILROAD ASSOCIATION, Plaintiff,**

**v.**

**PETTIBONE CORPORATION, International Insurance Company and Granite State Insurance Company, Defendants.**

**Bankruptcy No. 86 B 1563–71.**

**Adv. No. 91 A 00381.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 31, 1991.

---

See also 135 B.R. 847.

Robert S. Blanc, Sewell & Riggs, Houston, Tex., for Port Terminal R.R. Ass'n.

Robert D. Kolar, Robert D. Kolar & Associates, Richard C. Clark, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for Granite State Ins. Co.

Ronald S. Adelman, Chicago, Ill., for PL claimant Jimmie Gilliam.

David E. Bennett, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Official Creditors' Committee of Products Liability and Personal Injury Claimants.

Kevin T. Keating, Richard P. Klaus, McDermott, Will & Emery, Chicago, Ill., for Pettibone Corp.

Fritz K. Huszagh, Hinshaw & Culbertson, Chicago, Ill., for International Ins. Co.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

The Port Terminal Railroad Association (the "PTRA") has filed this Adversary complaint for declaratory judgment against Pettibone Corporation ("Debtor"), International Insurance Company ("International"), and Granite State Insurance Company ("Granite State"). Jimmie Gilliam ("Gilliam") has moved to intervene as an additional plaintiff herein pursuant to Rule 7024, Fed.R.Bankr.P. All Defendants moved to dismiss the PTRA complaint and International also moved to dismiss Gil-

liam's motion to intervene pursuant to Rule 7012, Fed.R.Bankr.P., Rule 12(b)(6), Fed. R.Civ.P. (International has also filed an Answer and Affirmative Defenses.) For reasons stated below, Gilliam's motion to intervene is granted, and Defendants motions are all denied.

### Factual Basis for Motion [1]

The following facts appear from the Complaint:

Gilliam was the plaintiff and the PTRA and Pettibone were codefendants in a products liability case. That case was tried before a jury in Harris County, Texas, and Gilliam was awarded judgment for damages of $857,447.78 on December 1, 1989. In a settlement prior to the trial, the PTRA made an advance payment of $300,000 to Gilliam. To the extent that Gilliam is successful in collecting in excess of $100,000 from the Debtor, he will refund the $300,-000 advanced by the PTRA.

Gilliam filed a proof of claim and was classified under the Second Amended Plan of Reorganization of Pettibone Corporation (the "Plan") as a Products Liability ("PL") Claimant for the 1984–85 policy year. The Debtor maintained primary insurance coverage for that policy year through a liability insurance policy issued by Northumberland General Insurance Company. Under that policy, the Debtor remained self-insured for $1,500,000 of personal injury liability for that policy year. As of the date of its petition for relief under Chapter 11 of the Bankruptcy Code (January 1986), the Debtor had paid out $349,673 of that amount, leaving $1,150,327 of self insurance to be supplied. The Debtor carried a second layer of coverage with Granite State in the amount of $5,000,000, and a third layer with International in the amount of $20,000,000.

In 1985, Northumberland became insolvent. After the Debtor's Chapter 11 petitions were filed, the Debtor negotiated and entered into several insurance agreements (the "PL Insurance Agreements") which provided that each insurer would defend the product liability claims and pay judgments and settlements to the holders thereof (the "PL Claimants") in each policy year up to the limits of each policy. International did not enter into such an agreement. The agreements that were signed became effective when the Plan was confirmed December 9, 1988.

Under the Plan, members of the subclass of PL Claimants for the 1984–85 policy year share pro-rata in an unsecured claim against Pettibone to the extent of the first $1,150,327 of claims liquidated by judgment or settlement. Thereafter, they share pro-rata up to $5,000,000 from the Granite State policy under the PL Insurance Agreements. If that limit is exceeded, they share pro-rata in the amount up to $20,000,-000 from the International policy. International's obligations are not triggered unless the aggregate liability to the PL Claimants exceeds the $5,000,000 limit of the Granite State policy.

International, Granite State, and the Debtor allegedly violated the Plan through their participation in the settlement of *Reichert v. Pettibone Corporation*, another products liability case that also arose in the 1984–85 policy year. The PTRA alleges that International, as an agent of Pettibone, and agents of Granite State participated in negotiations to settle that case. As a result of those negotiations, International paid $3,000,000 directly to the *Reichert* plaintiffs in settlement of all their claims. Granite State did not inform the PL Trustee, the Court, or the other PL Claimants of the settlement. Nor did it follow procedures set up under the Plan for such settlements.

If the *Reichert* claim had been settled in accordance with the Plan, then the aggregate liability to the PL Claimants for the 1984–85 policy year would be at least

---

**1.** For discussion in another context, see *In re Pettibone (Creditors' Committee of Products Liability and Personal Injury Claimants v. International Insurance Co.)*, 121 B.R. 801 (Bankr. N.D.Ill.1990) (the Official Creditors' Committee of Products Liability and Personal Injury Claimants filed an action alleging the same facts that are the subject of this litigation).

$3,857,447.78.[2] Thus, liability to this subclass would exceed the limit of the unsecured claim, and the claimants would receive payments from Granite State. The PTRA alleges that if this happened, Gilliam would be paid in excess of $400,000 with the final result being that the PTRA would be fully reimbursed for its advance.

Therefore, the PTRA alleges that: (1) that the Debtor violated the Plan "by permitting its agent, International, to settle the *Reichert* claim outside the terms of the Plan," Complaint at ¶ 18; (2) that International violated the Plan by failing to make the $3,000,000 settlement payment to the PL Trustee; and (3) that Granite State violated the Plan by participating in the settlement and failing to disclose the settlement. The PTRA seeks a declaratory judgment declaring that all three defendants are liable to the PL Trustee for the settlement payment in the *Reichert* claim, that International's and Granite State's insurance liability are not reduced by the amount of that payment, and for other unspecified relief.

Granite State and the Debtor have both argued in their motions to dismiss that Gilliam, not the PTRA, is the proper party to bring this complaint. In response, Gilliam has filed a motion to intervene stating that, "the PTRA therefore claims through Gilliam, and Gilliam generally supports the PTRA's positions in this case." Motion to Intervene at ¶ 3. International then moved to dismiss both the PTRA's complaint and Gilliam's motion to intervene.

## DISCUSSION

### *Jurisdiction*

This action seeks to enforce a provision of a Chapter 11 plan of reorganization. This matter is referred here pursuant to 28 U.S.C. § 157 and Local District Rule 2.33. This action is also before the Court pursuant to Art. VII, ¶ 7.01(b) of the Plan.[3] As

such, this action arises in a case under Title 11, and the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) since this matter arises in a case under Title 11, this Court has retained jurisdiction to enforce the Plan, and the PL Insurance Agreements and policies are the only means by which an effective administration of products liability claims under the Plan can be accomplished. See *In re Pettibone Corp.*, 121 B.R. 801, 804-05 (Bankr.N.D.Ill.1990).

### *Standards on Rule 12(b)(6) Motions to Dismiss*

In order for defendants to prevail on their motions to dismiss, it must appear from the pleadings that the plaintiff can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts, in a light most favorable to the plaintiff when reviewing the defendants' motions to dismiss. *Gorski v. Troy*, 929 F.2d at 1186; *Corcoran v. Chicago Park District*, 875 F.2d 609 (7th Cir.1989); *Ross v. Creighton University*, 740 F.Supp. 1319, 1326 (N.D.Ill.1990).

### *Standing*

1. Pettibone's Objection

■■■ The PTRA asserts an injury because International's unauthorized payment to the *Reichert* plaintiffs may decrease the amount of insurance proceeds distributed to Gilliam. Therefore, Petti-

---

**2.** This includes only the *Reichert* and *Gilliam* claims because the total liability to that subclass is unknown at this time.

**3.** Paragraph 7.01(b) states:

The Bankruptcy Court shall have exclusive jurisdiction over all Claims arising under the PL Insurance Policies and the PL Insurance Agreements and all Claims or disputes with respect to the proceeds thereof and other amounts payable thereunder....

bone argues that the PTRA is not the proper party to bring this action because its rights are only derivative of Gilliam's rights. However, Gilliam has moved to intervene, and for reasons discussed below, the Court is granting his motion. Thus, by Pettibone's own argument, the proper party is now before the court. Debtor's Memorandum in Support of Motion to Dismiss at 2 ("Gilliam, not the PTRA, is the proper party to bring this claim") Gilliam's intervention moots the Debtor's argument. When one plaintiff has standing, the Court does not need to consider the standing of other plaintiffs. *Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981); *National Wildlife Federation v. Burford*, 676 F.Supp. 271, 277 (D.D.C. 1985). For this reason, Pettibone's standing argument is without merit.[4]

### 2. Granite State's Objection

■ Granite State argues that the PTRA complaint should be viewed as a transferred claim under Rule 3001(e), Fed.R.Bankr. P., and seeks to dismiss the complaint because the PTRA has not complied with Rule 3001(e)(2).[5] Granite State has assumed that the $300,000 advance made by the PTRA to Gilliam occurred after a proof of claim was filed, and it is undisputed that the PTRA has not filed any evidence of transfer as required by Rule 3001(e)(2). To the extent that Granite State asserts that the PTRA lacks standing, however, its argument is moot due to Gilliam's motion to intervene.

4. The PTRA has not alleged any facts to show that it is a party to the Plan or that it was intended to be a beneficiary under the Plan. The PTRA is not mentioned explicitly or by reference in the Plan, and it was only injured by the breach due to its settlement with Gilliam. Thus the PTRA is merely an incidental third party beneficiary. Since incidental third party beneficiaries cannot bring complaints to enforce contracts, *Cosby v. Ward*, 843 F.2d 967, 981 (7th Cir.1988), the PTRA would lack standing in the absence of Gilliam's motion to intervene.

5. Rule 3001(e)(2) states:
**Unconditional transfer after proof filed.** If a claim other than one based on a bond or

This argument is further without merit because the PTRA's advance to Gilliam was not a transferred claim within the meaning of Rule 3001(e). It appears from the pleadings that the PTRA merely has a right to be reimbursed for its advance by Gilliam. While the agreement between Gilliam and the PTRA names the source of funds for that reimbursement, their agreement does not in itself give the PTRA any right of payment from the Debtor or its insurers. Furthermore, the liability of the Debtor and its insurers to Gilliam is not affected by this arrangement. While the Bankruptcy Code broadly defines what constitutes a transfer, *Matter of Compton Corp.*, 831 F.2d 586, 592 (5th Cir.1987), citing the Notes of the Committee on the Judiciary under 11 U.S.C. § 101 ("The definition of transfer is as broad as possible"), the purpose behind this definition is to allow debtors to avoid circuitous arrangements which have the effect of enabling one creditor to gain an advantage over other creditors from the same class. *Id.* at 591. This arrangement does not affect the Debtor's liability to Gilliam or the PTRA's status vis-a-vis the Debtor. Indeed, the PTRA is not a creditor of Pettibone or assignee of a creditor. Gilliam's claim has not been assigned or transferred to the PTRA, and Rule 3001(e) is not applicable in this case.

### 3. International's Objection

International argues that neither the PTRA nor Gilliam have standing to bring this claim because their rights are necessarily subsumed within and governed by

debenture has been transferred after proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee. The clerk shall immediately notify the original claimant by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed with the clerk within 20 days of the mailing of the notice or within any additional time allowed by the court. If the court finds, after a hearing on notice, that the claim has been unconditionally transferred, it shall enter an order substituting the transferee for the original claimant, otherwise the court shall enter such order as may be appropriate.

the Adversary complaint filed by the Official Creditors Committee of Products Liability and Personal Injury Claimants (the "Committee") that is now pending. International looks to the Plan to support its argument. However, a reading of relevant provisions shows this argument lacks merit.

International argues that the rights of PL Claimants under the PL Insurance Policies were assigned to the Committee in the Plan. Paragraph 7.01(a) assigns the *Debtor's* rights under the policies to a person designated the Policy Assignee, and pursuant to ¶ 7.01(f), the Committee has designated itself to be that person. Paragraph 7.01(g)(i) provides that the Policy Assignee is authorized to take actions to enforce the PL Insurance Policies for the benefit of the PL Claimants. However, nothing in the Plan assigns the *PL Claimants'* rights under the PL Insurance Policies to the Committee or the Policy Assignee.

■ International also claims that individual PL Claimants such as Gilliam are enjoined from bringing actions against Plan Insurers pointing to ¶ 7.01(c) of the plan which states that,

> ... all PL Claimants, are permanently enjoined from initiating or prosecuting any action or other proceedings, against any PL Insurer, including PL Agreement Insurers, or asserting any claim under, or otherwise attempting to enforce any PL Insurance Policy or PL Insurance Agreement.

This provision makes clear that Claimants may not sue Insurers to enforce the Debtor's policies, but Gilliam and the PTRA are bringing this action to enforce the Plan and not the policies with Granite State and International. Their claim is that by paying the *Reichert* plaintiffs directly and not paying the settlement money to the PL Trustee, the defendants have violated the *Plan.* There is no cause of action pleaded to enforce the policies. Also, the injunction created by ¶ 7.01(c) aims merely to prevent individual PL Claimants from undermining the Plan by litigating policy issues in other forums. It was not intended to hamper enforcement of the Plan in this Court. It is clear that nothing in the Plan prevents Gilliam or the PTRA from bringing this action, and International's arguments fail.

### Plaintiffs claim for damages from Pettibone

■ The Debtor argues that even if it did breach the Plan, there is still no basis for making a damage claim against it. This argument is based on the well recognized principle that breach of contract damages should place the aggrieved party in as good a position as he would have been in had the contract not been breached. *Chicago Painters and Decorators Pension, Etc. v. Karr Brothers, Inc.*, 755 F.2d 1285, 1290 (7th Cir.1985); *Restatement (Second) of Contracts* § 344 (1981). Under the Plan, Debtor was obligated to Gilliam and similarly situated claimants to assign its rights in the insurance policies to the Policy Assignee. Inferentially, Debtor was not to interfere with results of that assignment. There was no cash payment involved. The Debtor argues that since it did not owe money under the Plan, it cannot be made to owe money to this Plan claimant because of its alleged breach of contract.

The Debtor's argument has misconstrued this principle and is wrong as a matter of law. Damages are recoverable in actions for breach of contract when those damages "arise naturally from the breach" *Murphy v. Cincinnati Insurance Co.*, 772 F.2d 273, 277 (6th Cir.1985). See also *Restatement (Second) of Contracts* § 346(1) ("The injured party has a right to damages for any breach by a party against whom the contract is enforceable"). In a breach of contract action, the defendant's duty is make the plaintiff whole regardless of what its original obligations were. The Debtor is alleged to have breached the Plan, the Plan is enforceable against the Debtor, and damages are asserted to arise naturally out of the alleged breach. Thus, the plaintiffs may have a right to claim damages in this case.

Gilliam has rights under the Plan to receive an unsecured claim against the Debtor and a pro-rata share in the insurance proceeds. That is essentially what he and

the PTRA are asking for in the complaint. What the plaintiffs are saying is that if the Debtor had not breached the Plan, then they would have received benefit through payment from the insurance proceeds. They are asking for their entitlement under the Plan, and Debtor may be obligated to make the plaintiffs whole if it breached its duties under the Plan.

### Plaintiffs Claim for Damages from Granite State and International

■ An issue not raised by the parties is whether the Plan is enforceable against the insurers. The Court will for the limited purposes of these motions consider this issue preliminarily. As pointed out above, plaintiffs only have a right to damages from parties against whom the contract is enforceable. In this case, the contract is the Plan. See *In re Mako, Inc.*, 120 B.R. 203, 207 (Bankr.E.D.Okl.1990) ("A Chapter 11 Plan ... is nothing more nor less than a contract between a debtor and the creditors of the bankruptcy estate"); *In re L & V Realty Corp.*, 76 B.R. 35, 37 (Bankr. E.D.N.Y.1987), quoting *In the Matter of United Merchants and Manufacturers, Inc.*, 24 C.B.C. 220, 226 (Bankr.S.D.N.Y. 1981) ("At its simplest, a plan is an offer of promises made by a debtor and accepted by creditors following serious and frequently protracted negotiations"). Therefore, whether the Plan is enforceable against Granite State and International depends upon the terms of the Plan and whether they became bound to it by agreement or law.

Paragraph 7.01(b) states that "[a]ll proceeds and other amounts payable pursuant to each PL Insurance Policy and PL Insurance Agreement shall be paid solely to the PL Trustee ..." This paragraph also provides that the Bankruptcy Court retains jurisdiction over disputes concerning these policies. Furthermore, Article VII allocates the rights and responsibilities of each party vis-a-vis the insurance policies. As to whether the insurers are parties to the Plan and bound by it remains to be determined. However, it cannot be concluded on a motion to dismiss that International, Granite State, and the *Reichert* payment are not subject to the terms of the Plan. See *In re Pettibone*, 121 B.R. at 809.

### Statutory Basis for seeking Attorney's Fees and Costs

■ The Debtor further argues that the PTRA has no basis for seeking attorney's fees and costs in this action. Absent statutory authorization or an enforceable contract provision, a litigant may not recover attorney's fees and costs of litigation. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975); *Int'l Union of Op. Engineers v. Assoc. Gen. Contractors of Ill.*, 845 F.2d 704, 709 (7th Cir.1988). In its response, the PTRA claims statutory authorization pursuant to § 503(b)(3)(D) and (4)[6] of the Bankruptcy Code, Title 11 U.S.C. To be compensated under § 503(b)(3)(D), the creditor must make a "substantial contribution" to the Debtor's Chapter 11 Case. This test is difficult for creditors to meet since creditors act mainly in their own interests. *In re Johnson*, 126 B.R. 808, 810 (Bankr. M.D.Fla.1991). This is clearly true in this

---

**6.** These provisions state:
(b) after notice and a hearing, there shall be allowed administrative expenses, ... including—
(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by—
(D) a creditor, ... in making a substantial contribution in a case under chapter 9 or 11 of this title;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.
11 U.S.C. § 503.

case since Gilliam and the PTRA are seeking to have Gilliam's claim paid by the insurers.

The oft cited case of *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557 (Bankr. D.Utah 1985), contains an exhaustive discussion of what constitutes a "substantial contribution" under § 503(b)(3)(D). The *Jensen–Farley* court concluded that "[t]he appropriate test under section 503(b) is whether the services substantially contributed to a successful result, that is, an actual and demonstrable benefit to the debtor's estate, the creditors, and, to the extent relevant, the stockholders." 47 B.R. at 569. In this case, the plaintiffs' efforts may arguably result in real benefit to the estate by helping Gilliam's sub-class of claimants to increase their recovery. Since it is possible that plaintiffs may make a substantial contribution to the estate, the Debtor's argument is one to be considered following trial. It may not prevail on a motion to dismiss.

### Gilliam's Motion to Intervene

■ Rule 24(a), Fed.R.Civ.P., allows for intervention as of right when,

the applicant claims an interest relating to the property or transaction which is subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(b) allows for permissive intervention when, "an applicant's claim or defense and the main action have a question of law or fact in common." Clearly, Gilliam may intervene as of right under this rule because the subject matter of the dispute concerns the treatment of his claim, and without Gilliam's intervention, the PTRA would lack standing to prosecute this claim for him. See *supra* n. 5.

International argues that since this complaint seeks substantively the same relief as the Creditors' Committee seeks in *In re Pettibone,* 121 B.R. 801, Gilliam's interests are already being represented by an existing party. The claims of the Committee and the claims of the PTRA and Gilliam are indeed similar. However, an adverse ruling in the Committee's case might well impair Gilliam's ability to prosecute his claim, and the Plan does not enjoin him from bringing this claim. Moreover, the Committee supports Gilliam's intervention and recognizes the benefit to the other members of Gilliam's sub-class in having motivated parties such as Gilliam and the PTRA assist in litigating this matter. Therefore, the requirements of Rule 24(a) are satisfied.

■ Common questions of law and fact exist since the claims of Gilliam and the PTRA are based on the same facts and related theories. Also, the Court has considered whether the intervention "will unduly delay or prejudice the adjudication of the rights of the original parties," Rule 24(b), Fed.R.Civ.P., and finds that no such delay or prejudice will occur if Gilliam is allowed to intervene. Therefore, the requirements of Rule 24(b) are also satisfied. Whether this case and the Committee's related case should be consolidated or at least coordinated for discovery or other purposes should be considered.

### International as Debtor's Agent

■ The only basis for Debtor's liability which the PTRA has asserted is that International acted as Pettibone's agent in violating the Plan. Debtor points out that under the Plan all its rights under the International Policy were assigned to the Committee as Policy Assignee. Debtor argues that it had no responsibility or power to defend or settle the *Reichert* claim. The PTRA responds that Debtor had *de facto* control over International even though all their rights were officially assigned away. It alleges several facts in support of this *de facto* theory in their response to Pettibone's motion to dismiss. In that response, the PTRA also claims that the Debtor actively took a role in the settlement. If the Complaint were otherwise inadequate, the PTRA's argued response would be inadequate to defeat this motion. The Court may not consider allegations which lie out-

side of the complaint when ruling on a motion to dismiss. *Laramore v. Illinois Sports Facilities Authority*, 722 F.Supp. 443, 451 (N.D.Ill.1989), citing *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198 (7th Cir.1985).

The allegations actually within the complaint are that "International acted on behalf of Pettibone in settlement negotiations," Complaint at ¶ 13, "agents and representatives of Pettibone ... participated in the settlement negotiations in *Reichert*," Complaint at ¶ 14, and "Pettibone has violated the terms of its own Plan by permitting its agent, International, to settle the *Reichert* claim." Complaint at ¶ 18.

 The Court must construe pleadings liberally. Mere vagueness or lack of detail does not constitute sufficient basis for dismissal of a complaint treated under principles of Federal court notice pleading. *Strauss v. Chicago*, 760 F.2d 765, 767 (7th Cir.1985). In the absence of a more complete record, it cannot now be said that Plaintiffs will not be able to prove agency.

### CONCLUSION

Accordingly, by separate order all defense motions to dismiss the complaint and the motion to intervene are denied, and Gilliam's motion to intervene as plaintiff is granted.