In re PETTIBONE CORPORATION, et al., Debtor.

The OFFICIAL CREDITORS' COMMITTEE OF PRODUCTS LIABILITY AND PERSONAL INJURY CLAIMANTS, Plaintiff,

v.

INTERNATIONAL INSURANCE COMPANY and Granite State Insurance Company, Defendants.

PORT TERMINAL RAILROAD ASSOCIATION, Plaintiff,

v.

PETTIBONE CORPORATION, International Insurance Company and Granite State Insurance Company, Defendants.

Bankruptcy No. 86 B 1563–71.

Adv. Nos. 89 A 871, 91 A 381.

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 27, 1992.

David E. Bennett, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Official Creditors' Committee of Products Liability and Personal Injury Claimants.

Richard C. Clark, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for Granite State Ins. Co.

Fritz K. Huszagh, Hinshaw & Culbertson, Chicago, Ill., for Intern. Ins. Co.

Robert S. Blanc, Sewell & Riggs, Houston, Tex., for Port Terminal R.R. Ass'n.

Kevin T. Keating, Richard P. Klaus, McDermott, Will & Emery, Chicago, Ill., for Pettibone Corp.

## MEMORANDUM OPINION ON MOTION TO DISMISS INTERNATIONAL INSURANCE COMPANY'S CROSS-CLAIMS AGAINST GRANITE STATE INSURANCE COMPANY

JACK B. SCHMETTERER, Bankruptcy Judge.

### INTRODUCTION

The two cases of *Creditors' Committee v. International Insurance Company* and *Port Terminal Railroad Association v. Pettibone* arise from the same operative facts and have been consolidated for trial. In each case, International Insurance Company ("International") cross-claimed against Granite State Insurance Company ("Granite State"). Granite State moved to dismiss the cross-claims for lack of subject matter jurisdiction. It alternatively moves for abstention under 28 U.S.C. § 1334(c). For reasons stated below, Granite State's primary motions are each granted and the cross-claims are dismissed.

### FACTUAL BACKGROUND[1]

The underlying Adversary proceedings alleged that defendants breached Pettibone's Plan of Reorganization, through their activities resulting in International's paying three million dollars to personal injury claimants known as the Reicherts. The payment was made in cash directly to the Reicherts rather than being made available for pro-rata distribution to all creditors in the sub-class of personal injury claimants under procedures provided in the confirmed Plan. Defendants have denied violating the Plan and otherwise contest liability.

---

1. More detailed background information on these Adversary cases is set forth in *Port Terminal Railroad Assoc. v. Pettibone,* 1991 WL 328521, 1991 Bankr.Lexis 1542 (Oct. 29, 1991) (denying defendants' motions to dismiss the complaint for lack of standing), and *Official Creditors' Committee v. International Ins. Co.,* 121 B.R. 801 (Bankr.N.D.Ill.1990) (dismissing count I of plaintiff's complaint and denying motion to dismiss Count II).

International has filed identical cross-claims in both cases, claiming that if it is found to have any liability to plaintiffs, then Granite State is liable to it to the same extent. Each cross-claim contains three counts centered around Granite State's conduct vis-a-vis International. Granite State entered into a "Step-up" Agreement with Pettibone after its primary insurer Northumberland Insurance Company became insolvent and Pettibone filed its Chapter 11 petition. Pursuant to that Agreement, Granite State, which was the secondary carrier, undertook to defend Pettibone against certain personal injury claims. International provided the third layer of coverage. When International evaluated its exposure on the eve of trial of the *Reichert* case, it paid cash directly to the plaintiffs to settle that case. The nature of participation by International, Granite State, and Pettibone in that settlement process is disputed, and will be the subject of a trial in this Court on the underlying Adversary complaint.

International alleges in Count I of its cross-claim that Granite State breached duties owed to International under the "Step-up" Agreement by failing to inform International about the state of the *Reichert* litigation, and by failing to defend or settle that litigation in good faith pursuant to the Plan.

International alleges in Count II of its cross-claim that Granite State impliedly contracted to reimburse International for its payment to the Reicherts, and asserts that denying International reimbursement would unjustly enrich Granite State. International further alleges in Count III that it is entitled to equitable contribution from Granite State because the settlement discharged Granite State's liability to the Reicherts.

## DISCUSSION

The key issue presented in Granite State's motions to dismiss is whether this Court has subject matter jurisdiction over the cross-claims. Bankruptcy Judges comprise a unit of the District Court under 28 U.S.C. § 151, and the subject matter juris-diction of District Courts over bankruptcy matters is provided in 28 U.S.C. § 1334. District courts are authorized to refer all matters within the jurisdictional grant of § 1334 to the Bankruptcy Judges for the district. 28 U.S.C. § 157(a). In this juris-diction, all such matters have been referred pursuant to Local District Rule 2.33. A Bankruptcy Judge may issue final orders in "core" proceedings under § 157(b)(2), or submit proposed findings of fact and conclusions of law in "related" but non-core proceedings under § 157(c)(1). In determining jurisdiction, Bankruptcy Judges must first determine whether jurisdiction exists under § 1334 and then determine what powers they may constitutionally exercise under § 157.

Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Relationship of the dispute to the Pettibone estate and confirmed Plan (or lack of such relationship) determines whether the cross-claims here fall within the scope of § 1334(b). *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) ("it is the relationship of the dispute to estate, and not of party to estate, that establishes jurisdiction"). "Related to" jurisdiction is the broadest grant of authority, albeit not one under which final judgments may be entered without consent of the parties. *In re Spaulding & Co.*, 131 B.R. 84 (N.D.Ill.1990). Therefore, the Court will first consider whether the cross-claims are related to the *Pettibone* case. See *In the Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987) ("... it is necessary only to determine whether a matter is at least "related to" the bankruptcy.").

### *"Related to" Jurisdiction*

In a series of opinions, the Seventh Circuit has defined the scope of "related to" jurisdiction under § 1334(b). See *Home Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746 (7th Cir.1989); *In re Kubly*, 818 F.2d 643 (7th Cir.1987); *In re Xonics, Inc.*, 813 F.2d 127; and *In re Chicago, Rock Island & Pacific R.R. Co.*

*(Sanborn II)*, 794 F.2d 1182 (7th Cir.1986). The dispute between International and Granite State can only be "related to" the Pettibone bankruptcy if its resolution "affects the amount of property available for distribution or the allocation of property among the creditors." *Home Insurance*, 889 F.2d at 749. This test would embrace issues that affect implementation of a confirmed Plan.

International argues that the test for jurisdiction is "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy," citing *In re GF Corp.*, 127 B.R. 384, 386 (Bankr.N.D.Ohio 1991). While that is the prevailing standard in the Sixth Circuit, the Seventh Circuit construes "related to" jurisdiction more narrowly. *See* discussion in *In re Spaulding & Co.*, 111 B.R. 689, 692 (Bankr.N.D.Ill.1990) (the Seventh Circuit formulation of the "related to" test denies jurisdiction where the dispute is only "conceivably" related to the bankruptcy estate in a remote way). This Court is of course bound by the narrower Seventh Circuit test to determine whether it has jurisdiction over the cross-claims.

International's cross-claim has no effect on the amount of estate property available or to become available to any creditors, or on implementation of the confirmed Plan. International is claiming that Granite State is liable to it to the extent that it is liable to the plaintiffs or creditors. Assuming *arguendo* that International and Granite State are found liable to the plaintiffs or creditors for damages in the underlying Adversary proceedings, the amount of property available to creditors would increase. However, the only effect of successful cross-claims would be to change the ultimate source of any damages that must be paid. The amount of recovery by creditors of this estate would not be changed in any way. Plaintiffs' source of collection would not at all be affected by results of the cross-claims. Moreover, the cross-claims would not affect the allocation of property among creditors. International and Granite State provide insurance that comprise assets of the estate; they are not creditors.

Bankruptcy Judges frequently lack "related to" jurisdiction to hear third-party complaints which arise from Adversary proceedings. In *In re Spaulding & Co.*, 111 B.R. 689 (Bankr.N.D.Ill.1990), *aff'd*, 131 B.R. 84 (N.D.Ill.1990), the debtor filed an Adversary Complaint against a secured creditor seeking to set aside a preference under 11 U.S.C. § 547(b). The creditor filed a third party complaint against debtor's former counsel based on counsel's involvement in previous litigation. However, the creditor's claim against the law firm did not affect that creditor's claim in bankruptcy, and was merely a remedy it could pursue elsewhere should its defenses fail in the § 547(b) action. The third party complaint was dismissed. 111 B.R. at 689.

In *In re Peterson*, 104 B.R. 94 (Bankr. E.D.Wisc.1989), creditors filed an Adversary Complaint requesting that debtors' obligation to them be declared nondischargeable under 11 U.S.C. § 523(a). Debtors moved for leave to file a third party complaint claiming a right of indemnification or contribution from the third party defendant. That motion was denied because the proposed third party complaint "would have no effect on the amount of property in the estate available for distribution to creditors, nor would it affect any other creditors." *Id.* at 97.

In *In re John Peterson Motors, Inc.*, 56 B.R. 588 (Bankr.D.Minn.1986), an examiner filed a complaint under § 547(b). The defendant filed a third party complaint seeking indemnity or contribution as a result of a rescinded stock purchase agreement. The court dismissed the third-party complaint, noting that the dispute was between two non-debtors over which should be ultimately responsible for sums recovered from defendant in the main action. *Id.* at 591.

International's cross-claims here are like the third-party complaints in the cases cited above. They comprise a dispute between two non-debtors which will merely determine which party will ultimately be responsible in the event that International is found liable in the underlying Adversary

actions. The creditors and the Plan in the underlying bankruptcy procedure will remain unaffected by its outcome. Therefore, this Court lacks "related to" jurisdiction under § 1334 to adjudicate the cross-claim.

### "Arising under" and "Arising in" Jurisdiction

■ "Arising under" jurisdiction under § 1334 encompasses proceedings that involve a cause of action "created or determined by a statutory provision of title 11." *In re Spaulding & Co.*, 131 B.R. at 88. This Court lacks "arising under" jurisdiction to hear the cross-claims because they are based upon state law, not on a provision of title 11 U.S.C. "Arising in" jurisdiction encompasses administrative matters that arise only in bankruptcy cases and have no existence outside of the bankruptcy proceeding. The cross-claims are a response to the Adversary Complaints filed by plaintiffs. However, these claims are not necessarily incident to the administration of the estate, and the cross-claims can have an existence outside of the bankruptcy in state court (or in federal district court if diversity of citizenship is present). *Id.* Therefore, this Court also lacks "arising in" jurisdiction to hear the cross-claims.

### "Core" Jurisdiction

■ Since jurisdiction is lacking under 28 U.S.C. § 1334, there is no need to address whether "core" jurisdiction exists under 28 U.S.C. § 157(b)(2). This is because § 157 is not an independent source of jurisdiction. *Spaulding, Id.* at 90, citing *In the Matter of Wood*, 825 F.2d at 94–97 ("Section 157 does not enlarge the scope of this court's jurisdiction under Section 1334. It merely allocates the jurisdiction created by Section 1334 between core and non-core proceedings.") Moreover, International has not demonstrated that any of the categories of core jurisdiction specified under § 157(b)(2) are applicable here. With the possible exception of an action under 11 U.S.C. § 362(h) (sanctions for willful viola-

tions of the automatic stay), see *Price v. Rochford*, 947 F.2d 829, 832 n. 1 (7th Cir. 1991), a matter cannot be unrelated to the bankruptcy estate and yet still be a "core" proceeding.

### Ancillary Jurisdiction

■ This Court has already found core jurisdiction over the underlying Adversary proceedings. See, *Official Creditors' Comm. v. Int'l Ins. Co.*, 121 B.R. at 805, and *Port Terminal Railroad Ass'n. v. Pettibone*, 1991 WL 328521, 1991 Bankr.Lexis 1542 (October 29, 1991). Since this is a cross-claim between two defendants in those proceedings, one final theory may be that no independent source of jurisdiction is needed under Rule 7013 F.R.Bank.P., Rule 13(g) F.R.Civ.P.[2] See *American National Bank & Trust Co. v. Bailey*, 750 F.2d 577, 581 (7th Cir.1984), *cert. denied, Chicago Invest. Corp. v. American Bankr & Trust Co.*, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985) ("A Rule 13(g) cross-claim does not require an independent basis of federal jurisdiction"). However,

> The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1334(b). In other words, a factual nexus between a civil proceeding and a bankruptcy case is in and of itself insufficient to confer bankruptcy jurisdiction upon a court. [citations omitted] *In re Opti–Gage, Inc.*, 128 B.R. 189, 196 (Bankr.S.D.Ohio 1991).

Seventh Circuit opinion has mentioned in dicta that "a cross-claim between defendants requires a new source of federal jurisdiction when it does not affect the disposition of the claim that supplied the original federal jurisdiction." *In the Matter of Xonics, Inc.*, 813 F.2d at 131, citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Furthermore, several cases are discussed hereinabove wherein jurisdiction

---

**2.** This issue was raised by International in the Cross–Claim at ¶ 1 ("The jurisdiction of this Court is invoked pursuant to ... Rule 7013, [F.R.Bankr.P.]; Rule 13(g), [F.R.Civ.P.]"). However, this theory was not clearly discussed in briefs of either party.

was lacking to hear a third-party claim even though jurisdiction was present to hear the underlying case. Absent "related" jurisdiction, it is doubtful that this Court has general ancillary jurisdiction under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and its progeny, except to enter a dollar judgment in actions to bar dischargeability. See *In the Matter of Hallahan*, 936 F.2d 1496, 1508 (7th Cir.1991); *In the Matter of Kinney*, 114 B.R. 670 (Bankr. D.Neb.1990); *In re Aerni*, 86 B.R. 203 (Bankr.D.Neb.1988); *In re Shapiro*, 22 B.R. 685 (Bankr.E.D.Penn.1982). International's cross-claims are not within the scope of this Court's related jurisdiction since they do not affect disposition of the underlying Adversary proceedings. Therefore, the factual nexus between these cross-claims and the underlying cases is insufficient to create jurisdiction, and none is created under Rule 13(g).

### International's Authorities are Distinguishable

International cites several cases in support of its argument that the Court has jurisdiction to hear this case. Those are: *In re Chapman*, 132 B.R. 153 (Bankr. N.D.Ill.1991) (concerning a mortgage on the debtors' home—the only significant asset in the estate); *In re Rusty Jones, Inc.*, 124 B.R. 774 (Bankr.N.D.Ill.1991) (concerning an insurance bond which was to cover debtor's liability to a sub-class of warranty claimants); *In re Chateaugay Corp.*, 116 B.R. 887 (Bankr.S.D.N.Y.1990) (concerning obligations of various parties under penal bonds used to pay the debtor's workers' compensation obligations); and *In re World Wines, Ltd.*, 77 B.R. 653 (Bankr. N.D.Ill.1987) (concerning the disposition rights of various parties to and liabilities for rent arrearages and collateral that was property of the debtor). All these cases involved disputes that had a direct impact on the administration of the bankruptcy estate and directly affected relations between the debtors and their creditors. In contrast, International's cross-claims here would have no effect on administration of the estate or on relations between Petti-

bone and its creditors. Therefore the cited cases are readily distinguishable from the pleadings at hand.

■ Finally, International argues that jurisdiction exists based on ¶ 9.08(e) of the Plan which provides,

9.08 *Retention of Jurisdiction*

. . .

(e) to hear and determine matters arising in connection with PL Trust or its implementation and including the rights of and obligations under PL Insurance Policies and the PL Insurance Agreement of the PL Insurers, and PL Claimants and PL Trustee;

A plan provision may indeed be a sufficient basis for subject matter jurisdiction. *In re Lindsey*, 85 B.R. 397, 398 (W.D.Tex.1988); *In re Churchfield Management & Invest. Corp.*, 122 B.R. 76, 80 (Bankr.N.D.Ill.1990); *In re Tennessee Wheel & Rubber Co.*, 64 B.R. 721, 727 (Bankr.M.D.Tenn.1986), *aff'd*, 75 B.R. 1 (M.D.Tenn.1987). However, courts have retained post-confirmation jurisdiction only when it is necessary to implement and enforce provisions of the plan. See e.g. *Churchfield*, 122 B.R. at 80 (the prosecution of certain post-confirmation causes of action was an element in the administration of the estate). In this case, under the Plan the cross-claims do not relate to rights and obligations created by the defined "PL" (product liability) insurance policies and PL Insurance Agreement. In fact, International is not even defined under the Plan as a PL insurer. The Court does not need to retain jurisdiction over the cross-claims to implement or enforce the confirmed Plan. Thus, the cross-claims comprise a dispute which falls outside the scope of Plan ¶ 9.08(e). Since the cross-claims do not relate to the bankruptcy estate or affect its administration, the Court cannot interpret ¶ 9.08(e) to grant jurisdiction over this dispute in disregard of jurisdictional limitations under 28 U.S.C. § 1334.

### CONCLUSION

For reasons discussed above, this Court is separately entering orders that dismiss International's cross claims in each of the

consolidated Adversary proceedings. It is unnecessary to discuss Granite State's alternative plea for abstention under 28 U.S.C. § 1334(c). Without jurisdiction, the Court has nothing from which to abstain.