**FELLOWS, READ & ASSOCIATES, INC., Appellant,**

v.

**Ralph RIEDER, Appellee.**

No. 95 CIV. 3593 (DLC).

United States District Court, S.D. New York.

April 18, 1996.

**736**

Richard Ford Wells, Hecker Brown Sherry & Johnson, Camden, NJ, for Appellant.

COTE, District Judge:

Appellant Fellows, Read & Associates, Inc. ("Fellows") appeals from the February 28, 1995 decision of The Honorable Stuart M. Bernstein, United States Bankruptcy Judge, dismissing Fellows' complaint following trial. Fellows sought a determination that the debt arising from three guarantees executed by Ralph Rieder ("Rieder" or "Debtor") was not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) because the services obtained through the guarantees were induced by fraud. The Debtor has not submitted any opposition to this appeal. For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## BACKGROUND

The Debtor was an officer and shareholder of Riedhal, Inc. ("Riedhal"), a New Jersey

real estate developer. Fellows had entered into three contracts with Riedhal to provide civil engineering services in connection with three separate projects. By the summer of 1989, Riedhal owed Fellows $184,439.12 for those services. Fellows refused to provide any further work without a payment agreement and notes executed by corporate officials. The Debtor then guaranteed three notes made by Riedhal and R.I. & Drucker U.S.A., Inc. ("Drucker"), a company considering a merger with Riedhal.[1] After receiving the notes, Fellows attended a Township Planning Board hearing on October 18, 1989, which concerned one of the three projects, and rendered some minor, unidentified services on the other two projects. Fellows then ceased doing any work when Riedhal and Drucker defaulted.

Judge Bernstein ruled that Fellows had not met its burden of proving two elements of any fraud claim, to wit, that (1) it actually or reasonably relied on the Debtor's representation of his financial ability to perform, or (2) it suffered any damages in reliance on the guarantees.

## STANDARD OF REVIEW

This Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Bankruptcy Rule 8013. The Bankruptcy Judge's findings of fact "shall not be set aside unless clearly erroneous." *Id.* This Court, however, is not bound by the Bankruptcy Court's view of the law, which is reviewed *de novo.* Finally, where the Bankruptcy Court "has determined whether particular conduct satisfies a legal standard," its conclusion may be reviewed *de novo* by the District Court. *In re Luthra,* 182 B.R. 88, 91 (E.D.N.Y.1995) (citing *In re Tesmetges,* 86 B.R. 21, 23 (E.D.N.Y.1988); 9 L. King, *Collier on Bankruptcy* ¶ 8013.03).

## LAW

Section 523(a)(2)(A) of the Bankruptcy Code provides, in relevant part:

*A discharge* under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title

---

1. The notes were in the amounts of $63,618.98, $63,060.67, and $63,613.28, and due November

30, 1989, December 31, 1989, and January 31, 1990, respectively.

*does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.*

11 U.S.C. § 523(a)(2)(A) (emphasis supplied). This provision permits creditors to prove that particular debts arose through "impermissible means, and advances the cornerstone bankruptcy princip[le] that relief befall only the debtor with clean hands." *In re Luthra,* 182 B.R. at 91 (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

 To bar discharge from a debt under Section 523(a)(2)(A), a creditor must prove, by a preponderance of the evidence, *see Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), the following factors:

> (1) the debtor made a representation; (2) he knew the representation was false; (3) he intended to deceive the creditor; (4) the creditor relied on the representation; and (5) his reliance was the proximate cause of his damage.

*In re Luthra,* 182 B.R. at 91–92. Reliance must be "justifiable, but not reasonable, reliance." *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995). The difference between justifiable and reasonable reliance is that the former is a subjective standard, whereas the latter is an objective standard of conduct. According to the Supreme Court:

> "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases."

*Id.* at ——, 116 S.Ct. at 444 (quoting Restatement (Second) of Torts § 545A, cmt. b (1976)). It is only where,

> "under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or [plaintiff] has discovered something which should serve as a warning that [plaintiff] is being deceived, that [plaintiff]

is required to make an investigation of [plaintiff's] own."

*Id.* (quoting W. Prosser, Law of Torts § 108, p. 718 (4th ed. 1971)).

## DISCUSSION

### 1. Reliance

 In making its finding that Fellows had not shown actual reliance, the Court relied on testimony that Fellows obtained the guarantees because it feared that Riedhal might be stripped of its assets as a result of any merger with Drucker, leaving Fellows with only a claim against a corporate shell, and thus wanted the "ability" to look to the Debtor to pay the debt. As the Court analyzed the issue, Fellows was relying upon the expectation that the Debtor would be liable for damages, rather than on the truth of any implied representation that the Debtor was able to pay the amount guaranteed.

In this appeal, Fellows cites testimony that it contends proves it actually relied on the Debtor's ability to pay. For example, Fellows points out that its president, Joseph Read, testified that he would not "have gone through with the deal in the absence of the personal guarantee of Mr. Rieder"; that he did not have "any reason to believe that Mr. Rieder would be unable to pay the Notes as they became due"; that he knew Mr. Rieder was a principal in Riedhal; and that, generally, "the information [Mr. Read] learned about Ralph Rieder and his companies was positive."

The Court, however, must review the Bankruptcy Court's finding under the clearly erroneous standard of review and give "due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. The Bankruptcy Court observed Mr. Read while he testified as to the reasons for seeking a personal guarantee on the notes. The Court's conclusion is supported by Mr. Read's testimony, in which Mr. Read stated that the personal guarantees were important to him

> [b]ecause I'm never sure with development corporations whether they will merge, spin

off or consolidate with some other corporation and leave no assets in the corporation. So whenever possible we would take as a Promissory Note a personal guarantee from the principal and the corporation to forestall any problems later on.

Therefore, this Court does not find the Bankruptcy Court's finding to be clearly erroneous.

■ In addition, and alternatively, the Bankruptcy Court held that when no express representation of an ability to pay is made, and the creditor has made no inquiries to ascertain whether the promisor can pay, then reliance on the implied representation of an ability to pay is unreasonable. The Court concluded that Fellows had no information to form a reasonable basis to believe that the Debtor would be able to pay $184,000.00 over the succeeding three months when Riedhal had failed to pay it over the preceding months.

Fellows contends that its burden to prove that it reasonably relied on the Debtor's implied representation of financial ability is a "low hurdle" and that it carried that burden. The Bankruptcy Court's use of the reasonable reliance standard, which preceded the Supreme Court's decision in *Field v. Mans,* is clearly erroneous. Nevertheless, in light of my other rulings, I find it unnecessary to remand the case for further fact finding.[2]

## 2. Damages

■ Fellows contends that the Bankruptcy Court erred in measuring damages by looking at the value of the incremental work performed by Fellows between the receipt of the guarantees and the time it ceased doing any work for Riedhal. According to Fellows, the Court should have found that Fellows suffered damages in the amount of $184,439.12, that is, the total amount guaranteed, since it was the commitment to pay that sum which induced Fellows to continue with his work, and thus, constituted the "consideration" for that work. Fellows does not take

issue with the Court's findings that the work performed after receipt of the guarantees was a very small percentage of Fellows' overall efforts.

Fellows misses the issue when it argues that the Bankruptcy Court erred by refusing to measure its damages in terms of the amount of the guaranteed debt. In fact, Fellows admits elsewhere that "the misrepresentation [implied with the execution of the guarantees] most assuredly induced the engineering services that were performed *after* the agreement between the Debtor and the plaintiff took place." (Emphasis supplied.) Thus, under the plain language of Section 523(a)(2)(A), the services for which Debtor is indebted and which were induced by Debtor's fraud cannot include those services which were performed prior to the misrepresentation. In the end, appellant's argument must fail because it basically seeks to recover the damages arising from Debtor's failure to comply with the guarantees he signed. Such damages, however, cannot properly fall under Section 523(a)(2)(A) because Debtor only obtained whatever services were induced after the guarantees had been signed. Fellows did not offer evidence at trial that allowed such services to be valued; therefore, the Bankruptcy Court's finding that Fellows suffered no damages on account of the misrepresentation is not clearly erroneous.

## 3. Entry of Judgment

■ Finally, Fellows asserts that the Bankruptcy Court erred in failing to enter a money judgment on the contract claim arising from the breach of the guarantee. Judge Bernstein declined to enter a money judgment since the estate is a "no asset estate." Instead, he advised Fellows that it could file a proof of claim with the clerk.

As its sole authority that Judge Bernstein erred in proceeding as he did, Fellows refers to *In re Shapiro,* 22 B.R. 685 (E.D.Pa.1982). That case, however, only reinforces the soundness of the Bankruptcy Court's deci-

---

**2.** In any event, Fellows may have a difficult time proving that its reliance on the implied misrepresentation at issue was justified. As the Supreme Court in *Field v. Mans* made clear, no justifiable reliance exists when a plaintiff fails to investigate after becoming aware of something that should warn him that a defendant is not telling the truth. In this case, Fellows knew that Riedhal had failed to pay under the contracts and that Rieder was a principal shareholder of Riedhal.

sion. In *In re Shapiro,* the Bankruptcy Court denied plaintiff's motion to dismiss the debtor's affirmative defenses and counterclaim, which challenged the plaintiff's claim of nondischargeability. It reasoned that its jurisdiction to determine the dischargeability of a debt, which is vested exclusively in the bankruptcy courts, necessarily included the power to "consider the underlying transaction." *Id.* at 687. More to the point, the Bankruptcy Court, quoting a leading treatise on bankruptcy, also stated that

> if the bankruptcy court determines that a debt is *non*dischargeable, "it will decide the remaining issues, such as the amount of the indebtedness, and render judgment on the debt."

*Id.* (quoting 1A *Collier on Bankruptcy* ¶ 17.28A(4), at 1742.4 (14th ed. 1978) (emphasis supplied)). Since in the instant case, the Bankruptcy Court held the Debtor's debt dischargeable, it was not obligated to enter judgment on the contract claim arising from the breach of the guarantee.

### CONCLUSION

For the reasons set forth above, the decision of the Bankruptcy Court is affirmed.

SO ORDERED: